The **INDIAN LOOKOUT ALLIANCE**
**et al., Plaintiffs,**

**v.**

**John A. VOLPE, as Secretary of Transportation, et al., Defendants.**

**No. 72–44–1.**

United States District Court,
S. D. Iowa.

Aug. 4, 1972.

Robert B. Scism, Robert Jenks (Scalise, Scism, Gentry, Brick & Brick), Des Moines, Iowa, for plaintiffs.

Richard Turner, Atty. Gen., Asher E. Schroeder, Sp. Asst. Atty. Gen. of Iowa, Allen L. Donielson, U. S. Atty., Keith Uhl, Asst. U. S. Atty., David E. Wells, Chief Counsel, Fed. Highway Adm., Lenore M. Daly, Atty., Dept. of Transportation, Fed. Highway Adm., Washington, D. C., and Robert W. Goodwin, Asst. Atty. Gen., Dept. of Justice, Iowa, for defendants.

## MEMORANDUM AND ORDER

STUART, District Judge.

This is an action instituted by individuals and organizations concerned with our environment and natural resources to enjoin defendants from proceeding with actions preliminary to the construction of certain highways in the State of Iowa. Some plaintiffs will have portions of their own property taken for highway construction. Hearing on plaintiffs' Motion for Preliminary Injunction was consolidated with the trial on the merits as authorized by F.R.Civ. P. 65.

The cause of action is based on The National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. § 4321 et seq; The Environmental Quality Improvement Act of 1970 (EQIA), 42 U.S.C. § 4371 et seq; 42 U.S.C. §§ 1981, 1982 and 1983; The Fifth, Ninth, and Fourteenth Amendments to the Constitution of the United States and 23 U.S.C. § 101 et seq and 49 U.S.C. § 1652 et seq.

There is no substantial controversy over the facts material to this decision. The disputed evidence relates to the archeological values of the areas to be included in the highway construction and the exact location of the place which Indians used as a lookout. The question here is the legality of defendants' procedures.

In 1965 the Iowa State Highway Commission (ISHC) adopted a plan for a statewide Freeway-Expressway System

consisting of about 1900 miles of four lane divided highways to supplement the Interstate System. Freeway 518 (F–518) is a 272 mile long portion of that planned system. F–518–4 is that portion of F–518 located in Johnson County and is the subject of this suit.

For design approval and construction purposes F–518–4 has been divided into two segments of about seven miles each. The south segment (cost—$5,100,000) will approximately parallel present state highway 218 on the west. The north segment (cost—$4,551,000) starts at I–80 and diagonally by-passes Iowa City to the southwest. It is also intended to serve commuters by providing better access to Iowa City. It includes "218 interchange" (Cost—an additional $810,000) where the two segments join south of Iowa City.

Plaintiffs are concerned about the environmental impact of this highway on a bluffs system south of Iowa City about three miles long, designated throughout trial as "geological Indian Lookout". Starting at the north end, the bluffs system runs south then southeast and then south again. It lies two to three miles west of the Iowa River. The north segment of F–518–4 will cross the northern portion. The interchange and borrow pits will lie up against it. The southern segment will cut through the diagonal portion of this bluffs system and proceed on south. The land is privately owned.

The ultimate question for determination here is whether defendants have complied with section 102(2) (C), 42 U.S.C. § 4332(2) (C), of the National Environmental Policy Act of 1970, which provides:

"(2) All agencies of the Federal Government shall * * * (c) include in every recommendation or report on * * * major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on [the environmental consequences or impact of such action]."

It is undisputed that the one environmental impact statement (E.I.S.) prepared in connection with F–518–4 related only to the northern segment. No E.I.S. has been prepared for all of F–518 or the Freeway-Expressway System as a whole.

Plaintiffs make the following contentions:

1. The Freeway-Expressway System proposed by the ISHC is a "major federal action" within the meaning of NEPA, which requires that environmental assessments be made now of the impact on the environment of the system as a whole.

2. Freeway 518 is a "major federal action" within the meaning of NEPA which requires that environmental assessments be made of the impact of this Freeway on the environment.

3. F–518–4 is a "major federal action" within the meaning of NEPA which requires that environmental assessments be made of the impact of this entire project on the environment.

4. An E.I.S. is required for the southern segment of F–518–4 although both location and design approval were received before January 1, 1970, the effective date of NEPA.

5. The E.I.S. prepared for the northern segment of F–518–4 does not meet NEPA standards.

### Freeway-Expressway System and Freeway 518

Plaintiffs' contentions that there should be an environmental impact statement prepared for Freeway 518 and the Freeway-Expressway System will be considered together. These are nothing more than tentative plans for future highway construction for at least 20 years. The map introduced as an exhibit shows only general corridors, which are subject to change. Federal approval has not been requested and is not needed for such planning. No federal money has been involved. Neither has reached the stage of being a "major federal action". It would be impossible to prepare an E.I.S. on such indefinite propos-

als and it would be highly impractical to require it. In my opinion nothing in the law or regulations requires an E.I.S. on either the proposed Freeway-Expressway System or proposed F–518.

### F–518–4

F–518 has reached the project stage in Johnson County and has received a project number F–518–4. It is not contended that this project is not "a major federal action significantly affecting the quality of human environment". Plaintiff contends section 102(2) (C) of NEPA requires an E.I.S. for the whole project. Defendants admit no E.I.S. was prepared for the southern segment but contends it is permissible to divide the project and that an E.I.S. for the northern segment is all that is required because both location and design approval had been received for the southern segment prior to January 1, 1970, the effective date of NEPA.

 I cannot accept the position that the state may divide a project into different components to secure location or design approval and thereby limit the required E.I.S. to a corresponding segment. The considerations which may make it advisable to segment a project for federal approval and financing or for the purpose of construction contracts do not necessarily have any relationship to the environmental impact of the project. To fully appreciate the effect of the segmented division upon the environment an assessment might be required of all or a larger portion of project. I do not believe it would comport with the spirit or intent of NEPA to hold that an E.I.S. is always sufficient if it covers the same area as the segment of the project upon which the state seeks federal approval regardless of the circumstances.

The present case is a good example. Plaintiffs are concerned with the impact of this highway construction upon a bluffs system that is three miles long. The total project is only 14 miles long. If the southern segment is built up to the interchange or the interchange is constructed, it is obvious the entire

bluffs system will be affected. The approximate route will have been established. It would seem reasonable that Congress intended that the E.I.S. be broad enough to cover the area over which construction may be coerced by construction of another segment in a different area.

In Named Individuals Members of San Antonio Conservation Society v. Texas Highway Department (5th Cir., 1971), 446 F.2d 1013, a project was divided into three segments. The two end segments stopped at the boundaries of a public park. The defendant argued no environmental statement required by section 4(f) was needed because these segments took no parkland. The Court said:

"The frustrating effect such piecemeal administrative approvals would have on the vitality of section 4(f) is plain for any man to see. Patently, the construction of these two 'end segments' to the very border, if not into, the Parklands, will make destruction of further parklands inevitable, or, at least, will severely limit the number of 'feasible and prudent' alternatives to avoiding the Park. The Secretary's approach to his section 4(f) responsibilities thus makes a joke of the 'feasible and prudent alternatives' standard, and we not only decline to give such an approach our imprimatur, we specifically declare it unlawful." p. 1023. The Court stated a finding of bad faith was not necessary to a holding that the law was violated.

 In view of the limited size of the entire project, the fact that the outstanding scenic, geological, historical and archeological features of the route of the project was not considered as a whole and because of the coercive effect the construction of one segment of the highway has on the other, compliance with NEPA requires, in this instance, an environmental assessment of the entire project F–518–4.

### Southern Segment F–518–4

 Even if it were held that separate environmental impact statements

for the two segments of this project satisfy the requirements of section 102(2)(C), I am of the opinion that this section requires an environmental statement for the southern segment.

The southern segment received federal design approval March 25, 1969 and is exempt from the requirement of a design hearing. Approximately $700,000 of the estimated cost of $5,100,000 has been expended for preliminary engineering and planning costs, right-of-way acquisition, relocation expenses and minor construction. Plans, specifications and estimates for the construction have not been approved nor have federal funds been requested. The southern segment will be ready for the letting of bids this October.

Defendants take the position that no E.I.S. was required for the southern segment because it had received design approval prior to the effective date of NEPA. This position is in accordance with FHWA's Draft Instructional Memorandum, November 24, 1970, implementing NEPA at the time the E.I.S. involved here was prepared. There is much to be said for establishing a definite event after which an E.I.S. is not required for projects already initiated. It would facilitate administrative decisions and eliminate court actions where controversy might otherwise arise.

However, Congress did not do so and I do not believe such arbitrary action is within Congressional intent. It certainly is not within the guidelines established by the President's Council on Environmental Quality. 35 Federal Register 7392 (1970) provides:

"11. *Application of section 102(2) (c) procedure to existing projects and programs.* To the fullest extent possible the section 102(2)(c) procedure should be applied to further major Federal actions having a significant effect on the environmental even though they arise from projects or programs initiated prior to enactment of Public Law 91–190 on January 1, 1970. Where it is not practicable to reassess the basic course

of action, it is still important that further incremental major actions be shaped so as to minimize adverse environmental consequences. It is also important in further action that account be taken of environmental consequences not fully evaluated at the outset of the project or program."

"Such an administrative interpretation can not be ignored except for the strongest reasons, particularly where, as here, such an interpretation involves a construction of a statute by the men charged with the responsibility of putting that statute into effect." Environmental Defense Fund v. Corps of Engineers (E.D.Ark.1971), 325 F.Supp. 728, 744; Morningside-Lenox Park Association v. Volpe (N.D.Ga., 1971), 334 F. Supp. 132, 142.

This guideline appears to be in accordance with Congressional intent as expressed in the policy statement in section 101 which states it is a "continuing policy" of the government to "use all practicable means" to create and maintain conditions under which man and nature can exist in productive harmony. It places responsibility on the federal government "to use all practicable means, consistent with other essential considerations of national policy" to that end.

██ The statute "must be construed, as the court in Pennsylvania Environmental Council v. Bartlett [M.D.Pa., 1970, 315 F.Supp. 238, 248] put it, 'to indicate a moderate, flexible and pragmatic approach to the immediate application of the Act'". Elliott v. Volpe (D.Mass., 1971), 328 F.Supp. 831, 836.

██ Defendants did not use their discretion in determining whether it would be practicable to prepare an E.I.S. at the present state of the project. They did not prepare such statement because of the single fact that design approval preceded the effective date of the act. Even though the administrative agency has discretion in deciding the practicability of an E.I.S., it should exercise

that discretion with a goal of fulfilling rather than frustrating Congressional intent.

It appears to the Court that it was clearly practicable to prepare an E.I.S. for the southern segment. It is admitted that the environmental impact of the southern segment was re-evaluated after NEPA. The expenditures were less than ⅓th of the total cost, a substantial part of which must have been in right-of-way acquisition. This would be, to a large extent, reclaimable. It was conceded that routes could be changed up until the time contracts were let. The E.I.S. would assure a consideration of the environmental factors not only by defendants but by those whose interests and/or duties in protecting the environment are paramount.

I am not by this ruling meaning to suggest that the status of the southern segment of F–518–4 is to be disregarded. It, of course, should be considered in determining what further action should be taken on the project in light of the additional information revealed by the E.I.S. and other procedures practicable under Section 102.

The following cases support the position of the Court on this proposition. Arlington Coalition on Transportation v. Volpe (4th Cir., 1972), 458 F.2d 1323; Lathan v. Volpe (9th Cir., 1971), 455 F.2d 1111; Calvert Cliffs' Coordinating Committee, Inc. v. United States Atomic Energy Commission (1971), 146 U.S. App.D.C. 33, 449 F.2d 1109, 1114–1115; Conservation Society, of Southern Vermont, Inc. v. Volpe (D.Vt., 1972), 343 F.Supp. 761; Environmental Defense Fund, Inc. v. Tennessee Valley Authority (E.D.Tenn., 1972), 339 F.Supp. 806; Environmental Law Fund v. Volpe (N.D.Cal., 1972), 340 F.Supp. 1328; Morningside-Lenox Park Association v. Volpe (N.D.Ga., 1971), 334 F.Supp. 132, 144; Environmental Defense Fund v. Corps of Engineers (E.D.Ark., 1970), 325 F.Supp. 728, 743.

Of the cases cited by defendants only Brooks v. Volpe (W.D.Wash., 1970), 319 F.Supp. 90, seems to support a holding that an E.I.S. is not required after a certain event on the basis of statutory retroactivity. The other cases recognize the possible application of section 102(2) (C) to continuing activities on projects initiated before its effective date. Elliott v. Volpe, supra; Investment Syndicates, Inc. v. Richmond (D. Or., 1970), 318 F.Supp. 1038; Pennsylvania Environmental Council, Inc. v. Bartlett (M.D.Pa., 1970), 315 F.Supp. 238.

It is probably unnecessary to point out that this is not a ruling on the merits. The Court is making no judgment as to whether the project should be completed in its present location or whether the impact on the environment is such that it should be relocated. That determination rests with defendants. It is, however, the Court's opinion that Congress intended, under circumstances such as exist here, that the determination be made in the light of a detailed statement of environmental impact.

### Sufficiency of E.I.S. on Northern Segment

The Court finds it unnecessary to pass upon the sufficiency of the statement relating to the northern segment. I would not, however, be inclined to hold it insufficient if this were the only possible defect in the proceedings. I would not require the exposition of the alternatives suggested by plaintiffs. They do not serve the same purposes as the bypass closer to Iowa City. However, the statement was prepared during a transitional period and it would be advisable to expand it to more nearly conform to recent environmental statements when it is altered to include the southern segment.

It is therefore ordered by the Court that defendants should be and hereby are enjoined and restrained from further activities on project F–518–4 until they have filed and considered an environmental impact statement as required by 42 U.S.C. § 4332(2)(C) and applicable regulations for the whole project F–518–4 provided, defendants may make

application to this court, upon notice to plaintiffs, for permission to take actions required by compelling practical reasons or emergencies.

All further relief requested by plaintiffs is denied.