**Eugene BARTA and Beatrice Irgens, Plaintiffs,**

**v.**

**Claude S. BRINEGAR, Individually and as Secretary of Transportation for the United States, Washington, D. C., et al., Defendants.**

**No. 73–C–112.**

United States District Court, W. D. Wisconsin.

May 11, 1973.

D. G. Graff, Raymond E. Schrank, II, Madison, Wis., for plaintiffs.

John O. Olson, U. S. Atty., Madison, Wis., for Brinegar.

Charles A. Bleck, Asst. Atty. Gen., Dept. of Justice, State of Wis., Madison, Wis., for Clapp, Huber and Wambach.

## OPINION and ORDER

JAMES E. DOYLE, District Judge.

This is a civil action in which plaintiffs seek to enjoin the construction of a portion of a highway until a study of the impact of the portion of the highway on the environment has been completed pursuant to the provisions of § 102 of the National Environmental Policy Act (NEPA), 42 U.S.C. § 4332. Presently before me is plaintiffs' motion for a preliminary injunction. For the sole purpose of deciding that motion, I find as fact those matters set forth in the next portion of this opinion.

## FACTS

The Wisconsin State Highway Plan of 1966 included a provision for the improvement of Highway 53 between Eau Claire and Superior, a distance of roughly 130 miles. Potential routes for the new highway were considered at the state highway location hearing held in November, 1967. During 1968 some work was done on the southernmost portion of the highway, entirely at state expense. Since that time the Highway 53 project has received substantial financial support from the federal government. On November 17, 1969, the State Highway Authority (SHA) submitted to the Federal Highway Authority (FHWA) a Location Study Report for Highway 53 and requested approval of the relocation of the highway in a corridor which is generally west of its location at the time. The FHWA approved the proposed new location on December 19, 1969.

In early 1970 public hearings were held on the design of Highway 53 between Bloomer and Haugen (see appendix). Plaintiffs are seeking to halt construction on that portion of the proposed highway between the intersection with Highway 8 in Cameron and the northern boundary of Barron County. Thus, the Bloomer-to-Haugen stretch includes most of the portion of Highway 53 which is the subject of this suit. The purpose of the design hearings relating to the Bloomer-to-Haugen stretch was to consider the environmental, social, and economic effects of alternative routes within the western corridor approved by the FHWA. The first of these hearings, held on February 3, 1970, related to the stretch of Highway 53 between Bloomer and Cameron. The remaining section, from Cameron to Haugen, was the subject of the May 14, 1970, design hearing. Subsequently, the SHA submitted Design Study Reports for these two sections of Highway 53 to the FHWA, which approved the design for the Bloomer-to-Cameron stretch on August 16, 1970, and the design for the Cameron-to-Haugen stretch on January 18, 1971.

On November 24, 1970, purportedly pursuant to § 103 of NEPA, the FHWA issued guidelines relating to bringing its authority and policies into conformity with the intent, purposes, and procedures of NEPA. The effective date of that Act was January 1, 1970. The guidelines provided that environmental impact statements, provided for by § 102 of NEPA, need not be prepared for projects receiving design approval before February 1, 1971. However, the guidelines did require "reevaluation" by the proper state highway department of "projects on new location" and certain "major reconstruction projects," even though no environmental impact statements for such projects were required by the guidelines. Because the FHWA approved the

design of Highway 53 between Bloomer and Cameron and between Cameron and Haugen prior to February 1, 1971, the guidelines did not require an environmental impact statement. In the belief that the guidelines nonetheless called for "reevaluation" of the Highway 53 project, state and federal highway officials did reassess the project in February, 1971, concluding that existing plans should not be altered. No environmental impact statement, as provided for in § 102 of NEPA, was prepared for any portion of Highway 53 south of the northern boundary of Barron County.

The present status of the Highway 53 project is as follows: The project has been allocated $1,152,000 in Economic Growth Center Development funds pursuant to 23 U.S.C. § 143 (which became effective December 31, 1970) for each of fiscal years ending June 30, 1972, and June 30, 1973. Construction is complete and the highway is open to traffic between Eau Claire and a point four miles north of Bloomer. Construction work was begun on the section between New Auburn and Cameron in February, 1972. (It is not clear whether this starting date also applies to the uncompleted portion south of New Auburn.) From the point four miles north of Bloomer to Cameron grading is now nearly completed and paving contracts have been approved. Grading operations on the two mile section north of Cameron were commenced on July 11, 1972, and are now 70 percent completed. On the stretch between the point two miles north of Cameron to Rice Lake grading operations were begun on April 16, 1973, and are now five percent completed. No construction has begun on the highway north of Rice Lake.

An environmental impact statement is being prepared for Highway 53 from the northern boundary of Barron County north to Hawthorne. A final environmental impact statement has been filed for the stretch between Hawthorne and Highway 2. No such statement is being prepared for the portion between Highway 2 and Superior.

Plaintiff Eugene Barta is a farmer and landowner in Barron County. The farm is situated north of Highway 8. The proposed new Highway 53 cuts though his farmland, absorbing approximately 38 acres of that land and separating another 28 acres from the main farm buildings. Plaintiff Barta also hunts, fishes, and traps in the Barron County area, and these activities will be curtailed to the extent that the Highway 53 project visits injury upon the environment. Plaintiff Beatrice Irgens resides in Rice Lake, Barron County, Wisconsin, which lies north of Highway 8. Air and noise pollution caused by the construction work on Highway 53 near Rice Lake have interfered with the Irgens family's enjoyment of activities in and about their home. Plaintiff Irgens and her family frequently participate in outdoor recreation in the Barron County area; the extent of these activities and the family's enjoyment of them will be reduced to the extent that the Highway 53 project visits injury upon the environment.

Plaintiff Irgens is an active participant in public and community affairs in the Barron County area. She attended a Rice Lake City Council meeting in September, 1966, where she expressed a preference for a freeway corridor well to the east of the present planned corridor. She continued to advocate an eastern corridor in the November, 1967, hearing regarding the location of the highway and in a letter to the Division of Highways of the Wisconsin Department of Transportation. In hopes that the eastern corridor was still a possibility she attended the May 14, 1970, design public hearing, where she learned that consideration had been narrowed to alternatives within the western corridor. Plaintiff Irgens was not and is not aware of any public meeting concerning the highway which met after the May 14, 1970 hearing.

The proposed route for Highway 53 between Cameron and Haugen passes

through a marsh or wetland near Rice Lake, the Cranberry Creek Marsh, and the Red Cedar River. Each of these areas provides nesting, food, and shelter for waterfowl and other wildlife. The planned route for the highway passes approximately 150 feet from plaintiff Barta's home, approximately four or five blocks from plaintiff Irgens' home, and in the rear vicinity of many other homes between Haugen and Cameron. The physical damage to the land and to plant and animal life resulting from the construction of the highway and from the noise and air pollution caused by the construction process and by cars travelling on the highway would significantly affect the quality of the human environment in the vicinity of the highway.

## OPINION

Scherr v. Volpe, 466 F.2d 1027 (7th Cir. 1972), involved a highway construction project in which a section 102 environmental impact statement had not been filed. An order granting a preliminary injunction was affirmed. In the district court and in the court of appeals, it was contended that the history of the highway project in question, with respect to the effective date of NEPA, was such that no environmental impact statement was required. This contention was rejected by the district court, and also by the court of appeals, which stated (1034–1035):

> The defendants also claim that Section 102 of NEPA does not apply to Highway 16 because this project was in progress prior to January 1, 1970, the effective date of the Act. Although the Act is not to be given retroactive effect, [footnote omitted] it does apply, as the defendants recognize, to certain projects "ongoing" when the Act became effective. Considering the Congressional command that the Act be complied with "to the fullest extent possible", an ongoing project is subject to the requirements of Section 102 until it has reached that stage of completion where the cost of abandoning or altering the proposed

project clearly outweigh the benefits which could flow from compliance with Section 102. Arlington Coalition on Transportation v. Volpe, 458 F.2d 1323, 1332 (4th Cir. 1972). Here final federal approval for the project did not occur until over one year after the effective date of the Act. Actual construction was not commenced until almost two years later. Too, the defendants make no claim that they could not have satisfied the procedures outlined in Section 102. We hold, therefore, that the issuance of the preliminary injunction did not extend retroactive effect to NEPA.

In the present case, as of January 1, 1970, the effective date of NEPA, that segment of Highway 53 which is the subject of this action clearly had not "reached that stage of completion where the cost of abandoning or altering the proposed project clearly outweigh[ed] the benefit which could flow from compliance with Section 102." Nor had it reached that stage by January 1, 1971, nor January 1, 1972. Here, as in *Scherr*, final federal approval of this segment of Highway 53 did not occur "until over one year after the effective date of the Act." Here the interval between the effective date of NEPA and the commencement of construction of the disputed section of the highway was even longer than the interval in *Scherr*. I conclude that *Scherr* controls this case unless there is some specific factual circumstance in this case which distinguishes it, or unless there is some significant consideration which was entirely overlooked by the Court of Appeals in *Scherr*.

### Transitional Considerations

Section 103 of NEPA recognized that transitional problems would arise in the implementation of the Act, and it required federal agencies to propose to the President not later than July 1, 1971, "such measures as may be necessary to bring their authority and policies into conformity with the intent, purposes, and procedures set forth in this Act." On April 30, 1970, the Council on Environ-

mental Quality issued interim guidelines which stressed that environmental impact statements were to be prepared "to the fullest extent possible" even though the project had been initiated prior to January 1, 1970. On November 24, 1970, FHWA published its interim guidelines, which provided explicitly that environmental impact statements would not be required for projects which had received design approval or would receive design approval before February 1, 1971; with respect to two types of projects, however, "reevaluation" was required even though design approval had occurred or would occur before February 1, 1971. On August 24, 1971, FHWA adopted PPM 90–1, embodying the exemptions set forth in the November 24, 1970, FHWA interim guidelines.

It is urged by defendants in the present case that the significance of § 103 of NEPA, the November 24, 1970, interim guidelines, and PPM 90–1 was not pinpointed by counsel in *Scherr* and not adequately considered by the district court or the court of appeals.

Perhaps it may fairly be said that insufficient stress was placed upon § 103 and the guidelines in *Scherr*, although I do not express an opinion on the point. However, the administrative guidelines were expressly referred to in the February 8, 1972, opinion of the district court (which was included in the record on appeal), with the comment that the administrative guidelines did not insulate the agency from attack for noncompliance with the governing statute "if such guidelines serve to frustrate the basic purpose of the statute." (Page 8 of typewritten opinion). The district court cited, at this point in its opinion, Calvert Cliffs' Coord. Com. v. United States A. E. Com'n, 146 U.S.App.D.C. 33, 449 F.2d 1109 (1971). The pages (1114–1115) cited by the district court deal with the matter of conflict between statute and administrative regulation in a context somewhat different from the transitional problems of implementing NEPA, but at 1119–1122, the Court of Appeals dealt with transitional administrative guidelines directly relevant to those involved in the present case. I note that the opinion in *Calvert Cliffs'* was cited four times by the Court of Appeals in *Scherr*. Perhaps much more to the point, in deciding the very transitional question present in *Scherr*, the Court of Appeals cited Arlington Coalition on Transportation v. Volpe, 458 F.2d 1323, 1332 (4th Cir. 1972). At page 1332, the *Arlington* court discussed the precise FHWA administrative transitional guidelines (design approval before February 1, 1971) involved in *Scherr* and in the present case, and described reliance upon such a cutoff date as "arbitrary and capricious agency action and an abuse of administrative discretion."

There is no question that the court of appeals in *Scherr* intended to override the FHWA administrative transitional deadline.

*Economic Growth Center Development Highways Act, 23 U.S.C. § 143*

Counsel contends that I am required to balance the Congressional objective embodied in 23 U.S.C. § 143 with its objective in § 102 of NEPA. It is conceded that Congress did not allocate funds expressly for the highway project between Eau Claire and Superior, and that this specific allocation was performed administratively pursuant to § 143. However, it is argued that by authorizing appropriations under § 143 for 1972 and 1973 only, Congress revealed a sense of haste which would be inconsistent with a Congressional intention that the construction of highways should be delayed by stringent applications of NEPA, at least as to those highways which may promote the desirable development of natural resources and which may help to vitalize and diversify the economy in rural areas and small communities. Section 143 became effective December 31, 1970. It contained no provision expressly modifying NEPA. I am not persuaded that it was beyond the capacity of the executive branch of the government of the United States, with respect to particular segments of highway construction, both to abide by the requirements of Section 102

of NEPA and to give effect to § 131 by June 30, 1972, and June 30, 1973.

### Segments

In an effort to escape the effect of *Scherr* upon the present case counsel for the defendants contend, correctly, that the disputed highway construction in *Scherr* was not a segment in a continuous construction project. It is argued that the disputed segment in the present case is merely a segment in a continuous construction project from Eau Claire to Superior, and that the initial segments of the continuous project were clearly exempt from compliance with § 102 of NEPA, by virtue of time factors.

The basic question is whether, at the time or times that the highway administrators were required to make a decision about certain construction, "the cost of abandoning or altering the proposed project clearly outweigh[ed] the benefits which could flow from compliance with Section 102." Scherr v. Volpe, 466 F.2d, at 1034. It is obvious that these factors to be considered by the highway administrators varied with respect to this segment or that of the Eau Claire-Superior project, depending upon what steps had already been taken with respect to this segment or that. The present case demonstrates sharply that the highway administrators have been well aware of this obvious fact, because they have actually arranged for the preparation of environmental impact statements with respect to segments to the north of the disputed segment. By seeking to meld the disputed segment with much earlier segments of the overall project, the defendants cannot escape scrutiny of their evaluation of the factors which bore directly on the specific disputed segment. See Indian Lookout Alliance v. Volpe, 345 F.Supp. 1167 (S.D.Iowa, 1972).

### Laches

The decision of this court in *Scherr* granting a preliminary injunction was entered December 7, 1971, and its decision denying defendants' motion to dismiss was entered February 8, 1972. The decision of the Court of Appeals affirming the grant of the preliminary injunction was entered August 4, 1972. At least from the latter date, federal and state highway officials were fairly warned that in Wisconsin the FHWA administrative transitional cutoff date of February 1, 1971, could not be relied upon. In the present case, nevertheless, they appear to have persisted in reliance upon it. Under these circumstances, I cannot view with sympathy their contention that these individual plaintiffs should be barred from injunctive relief because this action was not commenced earlier.

### Conclusion

I find and conclude that the proposed disputed segment of Highway 53 is a "major Federal [action] significantly affecting the quality of the human environment," within the meaning of § 102 of NEPA; that § 102 required the preparation of an environmental impact statement; and that there was abundant opportunity to prepare such a statement prior to construction of the disputed segment. I find and conclude that plaintiffs enjoy standing to bring this action because the disputed construction will injure substantially their aesthetic, conservational, and recreational interests. I find and conclude that if the construction is allowed to continue, it will be impossible to restore the area to its previous environmental status. I find and conclude that, in the absence of preliminary injunctive relief, the damage to the plaintiff's interests will be irreparable.

### ORDER

Accordingly, for the reasons stated above and on the basis of the entire record herein, defendants, their officers, employees, agents, servants, and all other persons acting in concert or cooperation with them or at their direction, are hereby restrained and enjoined until further order of the court from engaging in any and all further construction or development of the Highway 53 construction project between Highway 8 and the northern boundary of Barron County, Wisconsin.

APPENDIX
Rough Diagram of Proposed Highway 53