INVESTMENT SYNDICATES, INC.,
a Washington corporation,
Plaintiff,

v.

H. R. RICHMOND, Administrator, Bonneville Power Administration,
Defendant.

UNITED STATES of America,
Plaintiff,

v.

INVESTMENT SYNDICATES, INC.,
et al., Defendants.

Civ. Nos. 70-564, 70-610.

United States District Court,
D. Oregon.

Oct. 27, 1970.

Stephen P. Ryder, Monheimer, Schermer, VanFredenberg & Smith, Seattle, Wash., for Investment Syndicates, Inc.; Richard Maizels, Portland, Or., associated counsel.

Sidney I. Lezak, U. S. Atty., D. Oregon, Jack G. Collins, First Asst. U. S. Atty., Portland, Or., for H. R. Richmond and United States of America.

OPINION

BELLONI, District Judge.

Investment Syndicates, Inc., land speculators, purchased five hundred acres of southwestern Oregon ocean-view property through which runs a 115 kv power transmission line. The Bonneville Power Administration (BPA) had been planning since 1967 to enlarge the line's capacity by constructing a new 230 kv line beside the existing one. It was to run the fifty-two miles between Bandon and Gold Beach. The government had acquired easements over twenty-two of the fifty parcels of land on the proposed line before January 1, 1970. Early in 1970 the government let contracts for clearing of the new right-of-way and for construction of the line. When Investment Syndicates purchased the property stakes, ribbons and other evidence of the proposed widening of the right-of-way were visible.

The clearing had been started when Investment Syndicates filed 70-564 in which it has asked that BPA be enjoined from continuing with the project until BPA complies with the National Environmental Policy Act of 1969 (NEPA), 83 Stat. 852. The United States then filed 70-610, a condemnation action to acquire an easement across Investment Syndicates' land. As a defense to the

condemnation action Investment Syndicates raised the same issues relating to the NEPA.

The hearings on Investment Syndicates' prayer for a temporary injunction and the government's motion to strike those defenses were consolidated. The government has also moved for dismissal of the complaint in 70–564, the environmental case, on the ground that the NEPA does not apply to this project.

Investment Syndicates contends that Sec. 102(2) (C) of the NEPA requires BPA to file an environmental statement before it can proceed with the project. That section requires all government agencies to file a statement with the Council on Environmental Quality whenever they contemplate major federal action which would substantially affect the quality of the environment. The pertinent part of that section is set out here.

Sec. 102 * * * (2) all agencies of the Federal Government shall

* * * * * *

(c) Include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on—

(i) the environmental impact of the proposed action,

(ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,

(iii) alternatives to the proposed action,

(iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and

(v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented.

Since I agree with the government that the NEPA does not apply to this project I will not deal with the government's two assertions that Investment Syndicates lacks standing to raise the

issue and that the suit is barred by the doctrine of sovereign immunity. I will deal with only two questions: Does NE PA apply here and should a temporary injunction issue in any event?

■ While the NEPA may be applicable to continuing activities, it is not meant to be retroactive. Brooks v. Volpe, 319 F.Supp. 90 (W.D.Wash., Sept. 25, 1970); Pennsylvania Environmental Council, Inc. v. Bartlett, 315 F.Supp. 238 (M.D.Penn., April 30, 1970).

■ Prior to 1967 BPA became aware of the need for future additional power transmission facilities to the southern Oregon coast and began considering possible methods for meeting this need. In 1967 Congress demonstrated its approval of the project when it authorized the appropriation of funds for the Bandon to Gold Beach line. By January 1, 1970, when the President signed the National Environmental Policy Act of 1969, money had been appropriated for almost all phases of the project including most of the construction. The letting of the contract, clearing of the right-of-way and construction of the line itself, although occurring after January 1, 1970, are merely a small portion of the work required to complete the project. I cannot believe that Congress intended that the NEPA apply to "major Federal actions" which had reached this stage of completion as of the date of enactment. It was not the intention of Congress to negate all of the work which had gone into this project, including design and planning costs, but to have it completed in an orderly manner. To hold that the NEPA does apply to this project would be to give the statute retrospective effect. See Brooks v. Volpe, supra. To order a work stoppage while a report is being prepared would cause a large increase in cost to the taxpayers and most likely would have little or no effect on the location or design of the line. I therefore hold that the NEPA is not applicable to the project.

If the NEPA were applicable in this situation I would have to balance the equities and consider the plaintiff's

chances of obtaining a permanent injunction in order to determine whether a preliminary injunction should issue. If the injunction were granted construction would be held up and the government would incur great expense. It is more probable than not that the Council on Environmental Quality would conclude that BPA's environmentalists had made a thorough study and arrived at the right decisions. Construction would then proceed along the presently proposed route. The only result would be delay in making adequate and reliable electrical current available to the residents of southwestern Oregon. Investment Syndicates presented several alternative plans but none appeared to offer any great improvement and some would either worsen the situation esthetically or be entirely impractical.

Having decided that the NEPA is not applicable it follows that: the request for a preliminary injunction in 70–564 is denied, the government's motion for dismissal of the complaint in 70–564 is granted and the government's motion to strike portions of Investment Syndicates' answer in 70–610 is granted.

This opinion shall constitute findings of fact and conclusions of law in accordance with Rule 52(a) Fed.R.Civ.P.