Bruce **NOLOP**, President of the University of South Dakota Student Association, an unincorporated association, on his behalf and on behalf of all other members of the Association; and Peter Kolbeck, individually, a citizen, and as Chairman of the Student Ecology Committee of the University of South Dakota Student Association, an unincorporated association, Plaintiffs,

v.

John **VOLPE**, individually and as Secretary of Transportation, Washington, D. C., et al., Defendants.

Civ. No. 71–79S.

United States District Court,
D. South Dakota, S. D.

Nov. 11, 1971.

Lee McCahren, Vermillion, S. D., for plaintiffs.

R. D. Hurd, Asst. U. S. Atty., for defendants Volpe, Kemp and Bue.

Carl W. Quist and Larry M. Von Wald, Asst. Attys. Gen., Pierre, S. D., for defendants Allmon, Feinstein, Stenson, Delzer and Kneip.

Martin Weeks, Vermillion, S. D., for intervenor defendant City of Vermillion.

## MEMORANDUM DECISION

NICHOL, Chief Judge.

The plaintiffs bring this suit as a class under Rule 23 of the Federal Rules of Civil Procedure on behalf of their

fellow students.[1] Jurisdiction is based on 28 U.S.C.A. Sec. 1331(a) with a federal question arising out of the applicability of 42 U.S.C.A. Secs. 4321–4347. This being a suit for injunction the court finds the amount in controversy to exceed $10,000 exclusive of interest and costs.

Plaintiffs seek a preliminary injunction enjoining the construction of a proposed four lane highway through the campus of the University of South Dakota in Vermillion. The road is presently designed for two lane traffic on what is known as South Dakota Trunk Highway 50 or City of Vermillion Cherry Street. The basis of the plaintiffs' claim is noncompliance by the state and federal authorities with Section 102(2) (C) of the National Environmental Policy Act of 1969 (42 U.S.C.A. Sec. 4332(2) (C) (hereinafter referred to as NEPA). Plaintiffs allege that such noncompliance will cause them irreparable harm through increased noise pollution, destruction of trees, increased traffic endangering the safety of pedestrian students and by ending the possibility of an all pedestrian campus.

The following issues have been presented: (1) whether plaintiffs have capacity to maintain this action; (2) whether plaintiffs can maintain a class action under Rule 23 of the Federal Rules of Civil Procedure; (3) whether plaintiffs have standing to maintain this action; (4) whether plaintiffs are barred by the doctrine of laches from maintaining this action; (5) whether the National Environmental Policy Act of 1969 (42 U.S.C.A. Secs. 4321–4347) should be applied retroactively and (6) whether plaintiffs will suffer irreparable damage.

At trial the testimony showed that both plaintiffs were under 21 years of age. By leave of court plaintiffs were allowed to appoint Father Willert as guardian ad litem for the infant plain-

tiffs. All of the defendants waived their right to object during the trial. Defendant City of Vermillion now objects contending that the plaintiffs lack legal capacity under Rules 17(b) & (c) of the Federal Rules of Civil Procedure to represent the class under Rule 23 of the Federal Rules of Civil Procedure.

■ Rule 17(b) of the Federal Rules of Civil Procedure requires the law of the infant's domicile to control his capacity to sue. Plaintiffs are domiciled in South Dakota. In Fink v. Fink, 70 S.D. 366, 17 N.W.2d 717 (1945), the South Dakota Supreme Court held that under S.D. Code Sec. 33.0405 (1939) an infant plaintiff must have a guardian appointed before he commences his suit. However, that statute prescribed an exclusive method for bringing an action on behalf of a minor. S.D.Comp.Laws Ann. Sec. 15–6–17(a) (Supp.1970) and S.D. Comp.Laws Ann. Sec. 15–6–17(c) (1967) now in effect do not have such a mandatory requirement. S.D.Comp.Laws Sec. 15–6–17(a) (Supp.1971) specifically allows the real party in interest a reasonable time to ratify, which Father Willert as guardian ad litem has done.

■ As to the City of Vermillion's claim that a class action cannot be maintained in the name of a minor plaintiff this court answers with the question: Who can better represent minor students than a fellow minor student? Defendants cite no authority for their contention. The plaintiffs fulfill all of the Rule 23(a) requirements for maintaining a class action. There are 5,625 members of the University of South Dakota student body. Thus the class is so numerous that joinder of all members is impracticable. The applicability of the National Environmental Policy Act of 1969 (42 U.S.C.A. Secs. 4321–4347) is common to all members of the class and the claims are typical of the entire class. A student poll received in evidence indicated that over 80% of the students sup-

1. Plaintiff Nolop is the president of the University of South Dakota Student Association while plaintiff Kolbeck is chairman of the Student Ecology Committee.

port this action and the students are represented by competent counsel so that the representative parties do fairly and adequately protect the interests of the class. The Rule 23(b) (2 & 3) requirements are met in that the defendants' failure to file an environmental impact statement affects the entire class generally, thereby making appropriate injunctive relief with respect to the class as a whole. The common questions of fact and law predominate and therefore a class action will best aid a fair and efficient adjudication of the controversy. The central issues are: was an environmental impact statement filed and was it necessary to file such? [2]

■ This Court orders the plaintiffs to give the proper Rule 23(c) notice to the other members of the class by publishing such notice conspicuously in the official student body newspaper of the University of South Dakota (the Volante) and by airing such notice over the University of South Dakota radio and television stations (KUSD). The Court deems this to be the best notice practicable under the circumstances because of the high cost of individual mailing.

■ To have standing the plaintiffs need only show that the challenged action has caused them injury in fact, economic or otherwise, and that the interest asserted is within the interest sought to be regulated by statute. Pennsylvania Environmental Council, Inc. v. Bartlett, 315 F.Supp. 238 (M.D.Pa.1970). The plaintiffs have met these tests. If the road project is executed the plaintiffs will be subjected to increased noise pollution and dangerous traffic—pedestrian conflicts. The plaintiffs assert their interest under a Congressional mandate requiring federal agencies to file an environmental impact statement.

■■ The City of Vermillion [3] raises the doctrine of laches to bar plaintiffs'

suit. It is the city's contention that the recently completed two lane Highway 50 by-pass would have been four lanes if the Cherry Street project were not contemplated. The city chooses to view the two projects as one. Their theory is that plaintiffs should have sued before the Highway 50 by-pass project was undertaken. However, the doctrine of laches is to be determined in light of all the circumstances and requires an unreasonable and prejudicial delay to the adversary. The mere lapse of time does not constitute laches. Harrisburg Coalition Against Ruining the Environment v. Volpe, 330 F.Supp. 918, 924 (M.D.Pa. 1971); Pennsylvania Environmental Council, Inc. v. Bartlett, 315 F.Supp. 238, 246 (M.D.Pa.1970). Here construction of the Cherry Street project is not to begin until the spring of 1972. That leaves an entire winter for the matter to be administratively determined. There will be no unreasonable or prejudicial delay.

■ The cases of Brooks v. Volpe, 319 F.Supp. 90 (W.D.Wash.1970); Investment Syndicates, Inc. v. Richmond, 318 F.Supp. 1038 (D.Or.1970); and Pennsylvania Environmental Council, Inc. v. Bartlett, 315 F.Supp. 238 (M.D.Pa.1970), all hold that the National Environmental Policy Act of 1969 is not to be given retroactive application. The reasoning of these cases is seriously questioned in 1 ELR 50048–49. As is pointed out in the Environmental Law Reporter, 1 ELR 50048, "Congress showed its intent that the Act be applied to action initiated prior to January 1, 1970, by omitting the traditional 'grandfather clause' and by stressing the inclusive applicability of the policy." In addition, the guidelines set out by the Council on Environmental Quality for preparing the 42 U.S.C.A. Sec. 4332(2) (C) environmental impact statements require federal agencies to prepare statements on major federal ac-

---

2. See Eisen v. Carlisle & Jacqueln, 391 F.2d 555 (2 Cir. 1968), for an excellent discussion of Rule 23 of the Federal Rules of Civil Procedure.

3. The city of Vermillion was allowed to intervene by stipulation of the parties.

tions even though they arise from projects or programs initiated prior to the enactment of NEPA. 35 Fed.Reg. 7391 (1970). Those guidelines further state:

> Where it is not practicable to reassess the basic course of action, it is still important that further incremental major actions be shaped so as to minimize adverse environmental consequences. It is also important in further action that account be taken of environmental consequences not fully evaluated at the outset of the project or program. 35 Fed.Reg. 7391 (1970).

Thus more enlightened reasoning shows that the NEPA can be applied retroactively. In Texas Committee on Natural Resources v. United States, 1 ER 1303 (W.D.Tex.1970), the Western District of Texas, per Roberts, District Judge, granted plaintiffs a preliminary injunction until the NEPA was complied with. The court stressed that "Congress has expressed in strong and clear language their concern over what we are doing to our environment" and that no funds had yet been expended.

This court is in full agreement with and adopts Judge Eisele's decision in Environmental Defense Fund, Inc. v. Corps of Engineers of United States Army, 325 F.Supp. 749 (W.D.Ark.1971). The defendants should follow Judge Eisele's suggestions very closely in preparing the necessary environmental impact statement required by this opinion.

Judge Eisele's words are particularly applicable to defendants' theory of retroactive application which would permit a double standard with respect to projects envisioned before the NEPA was passed. He says:

> (T)he degree of the completion of the work should not inhibit the objective and thorough evaluation of the environmental impact of the project as required by NEPA. Although the attitude of the defendants is understandable, nevertheless, as the Court interprets NEPA, the Congress of the

United States is intent upon requiring the agencies of the United States government, such as the defendants here, to objectively evaluate all of their projects, regardless of how much money has already been spent thereon and regardless of the degree of completion of the work. *Id.* at 752.

\* \* \* \* \* \*

At the very least, NEPA is an environmental full disclosure law. The Congress, by enacting it, may not have intended to alter the then existing decisionmaking responsibilities or to take away any then existing freedom of decisionmaking, but it certainly intended to make such decisionmaking more responsive and more responsible. *Id.* at 759.

■ We need not rest on a retroactive application of NEPA under the facts of this case. United States Department of Transportation Policy and Procedure Memorandum 90–1 (1971) (hereinafter referred to as PPM 90–1) in paragraph 5(b) requires an environmental statement to be prepared and processed as required by 42 U.S.C.A. Sec. 4332(2)(C) "for each highway section which received design approval on or after January 1, 1970. \* \* \*" Design approval is defined in PPM 90–1 paragraph 5(e)(1) as:

> That action or series of actions by which the FHWA (Federal Highway Administration) indicated to the HA (Highway Administration) that the essential elements of the highway as set out in paragraph 10 of PPM 20–8 were satisfactory or acceptable for preparation of the PS&E (plans, specifications and estimate).

PPM 90–1 at Appendix F–1(a) further requires environmental impact statements "where organized opposition has occurred or is anticipated to occur." The mere existence of this lawsuit shows that organized opposition has occurred. Polls showed that over 80% of the 5625 University of South Dakota students oppose the project.

The Cherry Street road project began in 1964 with an authorization for a survey. A temporary design sheet was approved in November of 1965. In February of 1968 another proposed design sheet was approved. A design and location hearing was held in Vermillion in July of 1969. In June of 1970 a final location and design approval was requested from the Bureau of Public Roads by the South Dakota Highway Department Preconstruction Engineer. That approval was received in July of 1970. The contract for construction was not approved until October of 1970. The facts are clear from the state's own evidence that the PPM 90–1 design approval was not received until after the NEPA was in effect. Therefore, the plaintiffs are not seeking a retroactive application of the NEPA. In Brooks v. Volpe, 319 F.Supp. 90 (W.D.Wash.1970), the date of highway location seemed to be the deciding factor as to PPM 90–1 design approval. In Investment Syndicates, Inc. v. Richmond, 318 F.Supp. 1038 (D.Or.1970), the Congressional appropriation of funds controlled, while in Pennsylvania Environmental Council, Inc. v. Bartlett, 315 F.Supp. 238, 248 (M.D.Pa.1970), the date the contract was awarded and finalized controlled. Thus it can be seen that each case must turn on its own facts. Here the contract was approved and final design and location approval were received after the NEPA was in effect and, therefore, the provisions of the NEPA must be met. The defendants are enjoined from further proceedings on project F–012–4(2) until they have complied with the NEPA by filing an environmental impact statement.

The defendants' contention that the plaintiffs will suffer no irreparable harm is completely without merit.

PPM 90–1 Appendix F–1 paragraph (3) (c) specifically states that

(a) highway section that divides or disrupts an established community or disrupts orderly, planned development or is inconsistent with plans or goals that have been adopted by the community in which the project is located or causes increased congestion

should be considered as significantly affecting the quality of the human environment. When seeking a preliminary injunction the plaintiffs need only establish a reasonable probability of success' in a trial on the merits. Brooks v. Volpe, 319 F.Supp. 90 (W.D.Wash.1970).

(I)t is sufficient if the court is satisfied that there is a probable right and a probable danger and that the right may be defeated, unless the injunction is issued, and considerable weight is given to the need of protection to the plaintiff as contrasted with probable injury to the defendant * * *. West Virginia Highlands Conservancy v. Island Creek Coal Company, 441 F.2d 232, 235 (4th Cir. 1971).

It is apparent that the plaintiffs have raised substantial issues concerning the procedural requirements of the NEPA. Defendants make no contention that the 42 U.S.C.A. Sec. 4332(2) (C) environmental impact statement was filed.

Upon the basis of the evidence and the law, the Court now concludes that the plaintiffs are entitled to an order enjoining the defendants from continuing with the Cherry Street road project F–012–4(2) unless and until they comply with the provisions of NEPA, especially 42 U.S.C.A. Sec. 4332(2) (C).

This memorandum decision shall constitute the Court's findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure.