CITIZENS FOR BALANCED ENVIRON-
MENT AND TRANSPORTATION,
INC., Successor in interest of Commit-
tee to Stop Route 7, et al., Plaintiffs-
Appellants,

v.

John A. VOLPE et al., Defendants-
Appellees.

No. 1241, Docket 74-1730.

United States Court of Appeals,
Second Circuit.

Argued July 19, 1974.

Decided Sept. 16, 1974.

Winter, Circuit Judge, dissented and filed opinion.

Haynes N. Johnson, Stamford, Conn. (Alphonse R. Noe, Stamford, Conn., Harvey D. Carter, Jr., Bennington, Vt., of counsel), for plaintiffs-appellants.

Clement J. Kichuk, Asst. Atty. Gen., Hartford, Conn. (Robert K. Killian, Atty. Gen., for the State of Connecticut, Richard Goodman, Bailey & Weschler, Hartford, Conn., William J. Lynch, Trans. Counsel, Conn. Dept. of Trans., Hartford, Conn., of counsel), for defendants-appellees.

Sarah Chasis, New York City (William F. Morrill, Lakeville, Conn., Jonathan Souweine, Scott Warner, Amherst, Mass., of counsel), for amici curiae Natural Resources Defense Council, Inc., Berkshire Litchfield Environmental Council, Inc., The Housatonic Audubon Society, Housatonic Valley Association, Massachusetts Public Interest Research Group, Vermont Public Interest Research Group.

Before MULLIGAN and WINTER,* Circuit Judges, and POLLACK, District Judge.**

PER CURIAM:

This is an appeal from an order which denied a motion seeking to enjoin the construction of the segment of Route 7 north from Danbury to New Milford, Connecticut until an environmental impact statement (EIS) has been filed in accordance with the National Environmental Policy Act, 42 U.S.C. § 4332(2)(C). The order is affirmed on the opinion of Judge Newman below.[1] 376 F.Supp. 806 (D.C.Conn.1974).

In Conservation Society of Southern Vermont, Inc. v. Secretary of Transp.,

---

\* Of the Fourth Circuit Court of Appeals, sitting by designation.

\** Of the United States District Court for the Southern District of New York, sitting by designation.

1. A permanent injunction preventing construction of Route 7 south from Danbury to Norwalk, Connecticut, until an EIS was prepared was issued by Judge Newman in Committee to Stop Route 7 v. Volpe, 346 F. Supp. 731 (D.Conn.1972).

362 F.Supp. 627 (D.Vt.1973), appeal docketed, No. 73-2629 (2d Cir. 1973), Judge Oakes held that the EIS prepared under the supervision of the defendant Secretary of Transportation covering the Bennington to Manchester, Vermont segment of Route 7 was insufficient and barred construction of that portion until an EIS for the entire Route 7 corridor from Burlington, Vermont to Norwalk, Connecticut had been prepared. In his opinion, Judge Oakes made a general finding that federal highway officials have knowledge of the overall planning process by the state officials and that the states have taken advantage of federal highway planning money in connection with Route 7 improvement. 362 F.Supp. at 636. He further found "that there is no overall federal plan for improvement of the Route 7 corridor in the three states into a divided limited access superhighway." Id.

The question before Judge Newman was whether or not the construction of the segment of Route 7 between Danbury and New Milford constituted "federal action" within the meaning of 42 U.S.C. § 4332(2)(C). In a thorough opinion, he concluded that this portion of Route 7 was not to be deemed "federal action" since only state funds are to be used in its construction, and that therefore no EIS was required.

Judge Newman was fully aware of Judge Oakes' opinion in *Conservation Society*. Since the segment in Connecticut was specifically before the Connecticut District Court and not before the Vermont District Court (the State of Connecticut was not a party and did not appear in that action), we are not persuaded that Judge Oakes' general findings override the specific finding below that no federal action was present. Thus we agree with Judge Newman that no EIS for this portion of Route 7 (Danbury to New Milford) is necessary prior to the construction of this challenged project.

The order below is affirmed.

WINTER, Circuit Judge (dissenting):

Because of the interrelation of this case with the appeal pending in Conservation Society v. Secretary, 362 F.Supp. 627 (D.Vt.1973), I think it unwise to decide this case until Conservation Society has been heard and the two can be decided together. But even if we proceed to piecemeal decision, with the attendant risk of inconsistent conclusions and the possible need for further hearing, I cannot agree that Connecticut should be excused from compliance with the National Environmental Policy Act, 42 U.S.C. § 4332 [NEPA], in the construction of the 4.7 mile segment of new or relocated Route 7, which is the subject of the litigation before us. I respectfully dissent and set forth the reasons for my disagreement.

I.

The instant case arose when plaintiffs, whose predecessors in interest were successful in requiring Connecticut to comply with NEPA in the construction of new or relocated Route 7 between Norwalk and Danbury, south of Danbury, Committee to Stop Route 7 v. Volpe, 346 F.Supp. 731 (D.Conn.1972), sought similar relief with respect to all or any part of the construction of Route 7 *north* of Danbury, and particularly with respect to the construction of the 4.7 mile segment running north from Danbury to Brookfield, Connecticut, currently under construction. It is conceded that the proposed construction, which is proceeding apace because both the district court and this court denied permanent and interim relief, has a "major" and "significant" impact upon the environment. The only issue is whether the construction of the segment is "Federal action" within the meaning of NEPA.

II.

Later, I will deal more fully with the findings in Conservation Society v. Secretary, supra, but for present purposes it suffices to say that Circuit Judge Oakes, sitting by designation, found that

the proposed improvement of the Route 7 corridor from Norwalk, Connecticut, to Burlington, Vermont, was sufficiently an overall project involving federal action that he required, as a condition to the construction of a two-lane segment between Bennington and Manchester, the preparation of an environmental impact statement (EIS) "in respect to the entire Route 7 corridor . . . ," 362 F.Supp. at 638. Manifestly, this order is inconsistent with Judge Newman's order in the instant case that an EIS is not necessary for the Danbury-Brookfield segment.

Although Judge Newman demonstrated that he knew that *Conservation Society* had been decided, he made no effort to reconcile his decision with that of Judge Oakes. The majority makes none either, except to resort to the rule of thumb of statutory construction that the specific prevails over the general—a rule which may or may not be applicable here —and to call attention to the fact that Connecticut was not a party in *Conservation Society*. However, the National Environmental Policy Act imposes the duty of preparing an adequate environmental impact statement on federal officials, see Greene County Planning Board v. FPC, 455 F.2d 412 (2 Cir.), cert. denied. 409 U.S. 849, 93 S.Ct. 56, 34 L.Ed.2d 90 (1972), and from the official report of *Conservation Society* it appears that the plaintiffs in the instant case, Citizens for Balanced Transportation and Environment, Inc., were also plaintiffs in *Conservation Society*, where they obtained a favorable judgment against the Secretary of Transportation, *defendant in both cases*, that an adequate environmental impact statement would have to cover the entire Route 7 corridor, including the Danbury to Brookfield segment.

One who sits by designation in a sister circuit should avoid appearing to be an ungrateful guest, but I must nevertheless give voice to dissatisfaction with the majority's refusal to have these cases heard and decided together by this or another panel of the court. Absent an appellate decision overturning *Con-servation Society* in whole or in part, I must treat it as a presumptively correct decision. Both it and the instant case cannot be reconciled on the single record before us. Under the practice of this circuit, if the decision in this case is at variance with what may ultimately be decided in *Conservation Society*, resolution may come about only after rehearing or rehearing in banc. In these days of crushing caseloads, the majority should recognize that judicial efficiency is achieved by avoiding duplicate hearings. We ought to do what is to me the obvious—advance *Conservation Society*, hear and decide it, or order the instant case reheard and decided by the panel to which *Conservation Society* is or will be assigned.

### III.

If we proceed to decision in the instant case, I cannot agree that NEPA should be held inapplicable. Essentially, I reach that conclusion from viewing the Danbury-Brookfield segment in its historical context and in its physical context as a part of the existing and proposed relocated Route 7, and from considering the extent to which federal funds have been expended in the planning and construction of the segment and its continuations.

In *Conservation Society*, which at the time of decision of the instant case stands unreversed, Judge Oakes found that while "there is no overall federal plan for improvement of the Route 7 corridor in the three states [Vermont, Massachusetts and Connecticut] into a divided limited access superhighway," 362 F.Supp. at 636, nevertheless:

The court finds, however, that each of three states' highway departments are looking toward this end as possible of accomplishment with legislative and federal approval over a long-range period of time, with federal approval taking place on an ad hoc basis at the division engineer level. The court finds, moreover, on the basis of the testimony of Mr. Morris that the construction of isolated sections along the

corridor will induce traffic, tending further to require additional construction beyond presently planned termini. The court further finds that federal highway officials have knowledge of the overall planning process by state officials and to a considerable extent work in "partnership" with state officials in connection therewith, and that each of the three states has from time to time taken advantage of federal highway planning money specifically in connection with Route 7 improvement. (Footnote eliminated.) 362 F.Supp. at 636.

Judge Oakes' findings largely confirm what Judge Newman found in earlier proceedings in the instant case when he concluded that the Norwalk-Danbury segment could not be constructed until Connecticut and federal officials brought themselves into compliance with NEPA. *Committee to Stop Route 7*, supra. There, Judge Newman described the road as "a 31-mile, four-lane limited access expressway to replace U.S. Route 7 from Norwalk to New Milford, and perhaps eventually on to the Massachusetts line." 346 F.Supp. at 733. He found:

> The state has authorized bonds for the expressway and undertaken extensive planning for it. The expressway will qualify for 50-50 federal funding as part of the system of primary routes, including such routes within urban areas. The state expects to use some $25,000,000 of its apportionment of federal funds on selected segments of the expressway. Federal funds have already been used for one segment in Norwalk and to construct interchanges on Interstate 84 in Danbury, an east-west highway, to which relocated Route 7, if built, will link up from the south just west of Danbury, and from which it will continue north from a point just east of Danbury. 346 F. Supp. at 734.

It would thus seem clear from the findings of Judges Oakes and Newman that the Danbury-Brookfield segment in suit is only part of a very much larger overall project contemplated to be built in large part by the use of federal funds. Connecticut eschewed use of the federal funds to which it would have been entitled in letting contracts for the Danbury-Brookfield segment. It did so only after (a) Judge Newman required an EIS in *Committee to Stop Route 7* for the Norwalk-Danbury segment and (b) Connecticut unsuccessfully sought an advisory opinion from Judge Newman of its obligations vis-a-vis NEPA in regard to the Danbury-Brookfield segment before deciding how to finance its construction. Prior to then, Connecticut had considered using anticipated federal funds of $28.4 million for the overall construction of new Route 7 from Norwalk to New Milford, and some were used in constructing the segment from Norwalk to Danbury. While it has used none in letting contracts for the Danbury-Brookfield segment, it is not disputed that Connecticut has followed all procedural steps, except compliance with NEPA, to maintain its eligibility for federal funds for the entire Danbury-New Milford segment. The inference seems inescapable that at some future date it may be found that Connecticut's disavowal of federal funds for building the Danbury-Brookfield segment is no more than a bookkeeping entry shifting federal funds which might have been used for the Danbury-Brookfield segment to other portions of new Route 7 or to other projects where compliance with NEPA will be less onerous.

It is undisputed that approximately $50,000 of federal funds was spent in planning the segment in suit. Admittedly, this is little compared to the estimated cost of construction of $38,000,000. Still, the question is not whether the expenditure of $50,000 of planning dollars had a significant effect on the federal *highway trust fund,* but rather whether the expenditures "significantly affect[ed] the quality of the human *environment.*" 42 U.S.C.A. § 4332 (C) (emphasis supplied). "[T]he Department of Transportation has deter-

mined that any action significantly affecting the environment is major, DOT Order 5610.1, Definitional Guidelines (2). . . ." Monroe County Conservation Council, Inc. v. Volpe, 472 F.2d 693, 698 (2 Cir. 1972). The planning stage is the point at which it makes the most sense to impose NEPA's requirement of consideration of alternatives. It will frustrate the Congressional purpose behind NEPA and will occasion unnecessary and costly delays if we hold that a *relatively* small initial expenditure of federal planning funds does not trigger NEPA, but that the subsequent expenditure of federal construction funds does.

The Brookfield-Danbury segment is inextricably tied into other roads on which vaster federal expenditures have been made. The southern terminus of the segment is connected, without exit, to an existing federally-funded bridge; and this in turn is connected, again without exit, to I-84, a federally-funded interstate highway. As found by Judge Newman:

> cars travelling north from Danbury on new Route 7 will cross the federally-funded bridge and remain on the state-funded portion of new Route 7 for about one mile until the first exit is reached. Similarly, cars coming south toward Danbury on new Route 7, after passing an exit one mile north of the bridge, will have to cross the bridge and continue into I-84. . . . 376 F.Supp. at 810.

Thus, the physical connection between the segment and construction which is unquestionably "Federal action" is demonstrated. To belittle this fact, Connecticut disingenuously asserts that the state-financed segment simply connects I-84 to new Route 7. Equally, it seems to me to connect new Route 7 to I-84. *The fact is that one cannot use the southern portion of the segment in question without using a bridge and spur constructed with federal money.*

IV.

Were this a case in which the Danbury-Brookfield segment was a middle section of an overall federally-financed road, the case would be clearly one of impermissible segmentation and easily decided. Under such circumstances, the authorities are in accord that Connecticut would be required to comply with NEPA with regard to that segment. Named Ind. Mem. of San Antonio Con. Soc. v. Texas Hy. Dept., 446 F.2d 1013 (5th Cir. 1971); Thompson v. Fugate, 347 F.Supp. 120 (E.D.Va.1972). The case is, of course, not that clear, because the portion of Route 7 north of Brookfield has yet to be built and a final decision as to how to finance that construction has yet to be made. Still, there are striking similarities to a true segmentation case, and I have no doubt that we ought to conclude that NEPA applies.

The findings of Judge Oakes and of Judge Newman make certain that construction of the segment in suit is only part of a grander, more comprehensive plan—a complete relocation of existing Route 7, at least from the Connecticut Turnpike to New Milford, Connecticut, if not to Burlington, Vermont. For the Connecticut portion, if not for the entire project, federal financing has been contemplated and federal financing has been employed. Connecticut has been assiduous in preserving its eligibility for federal financing. I agree that the latter would probably not be a sufficient basis to make NEPA applicable, but in this case there is more. Federal funds have already been used to construct the Norwalk-Danbury segment, and the Danbury-Brookfield segment is so designed and will be so built that it will be a mere continuation of what the federal government has already financed. Moreover, some federal funds have been spent in the design of the Danbury-Brookfield segment. These factors make applicable the principles of La Raza Unida v. Volpe, 337 F.Supp. 221 (N.D.Cal.1971), even though construction of the Danbury-Brookfield segment

is not federally financed. They serve also to distinguish the holding in James River and Kanawha Canal Parks, Inc. v. Richmond, 359 F.Supp. 611 (E.D.Va. 1973), aff'd, 481 F.2d 1280 (4 Cir. 1973) (per curiam) because of the clear evidence of federal action.

This is not a case where there is a clean physical break, or clear escape hatch for the travelling public, between an existing federally-financed project and one to be built by state funds. A traveller on one *must* use the other. The two do not merely "connect," as the district court treated them; each is a physical extension of the other. This is not a case, either, where Connecticut has committed itself to exclusively state financing of the continuation of the Danbury-Brookfield segment when inevitably it will be built. There is every indication that federal financing will again be resorted to in successive construction where compliance with NEPA will not be burdensome. Manifestly, if the grand design of NEPA, so elegantly articulated in Calvert Cliffs' Coord. Comm. v. United States A. E. Com'n, 146 U.S. App.D.C. 33, 449 F.2d 1109 (1971), is to be preserved, the Act must be complied with now.

It matters not that the entire Danbury-New Milford segment, of which the Danbury-Brookfield segment is a part, has a useful purpose to serve the two communities, aside from its function as a continuation of new Route 7 and a continuation of other federally-funded facilities. Sierra Club v. Froehlke, 359 F. Supp. 1289, 1324–1325 (S.D.Tex.1973); *Conservation Society,* supra. And this is true even if one agrees that a four-lane, limited access highway is needed to connect a city of 53,300 with another of 15,400. To conclude otherwise would destroy the overall purpose of NEPA. It is too common an experience not to recognize that there is some local use on every limited access highway, even those admittedly built as a result of major federal action. We ought not to permit this concurrent purpose to obscure the function of the Danbury-Brookfield seg-

ment as a necessary link in the overall relocated Route 7—a project treated by Connecticut as a single project (until it experienced the impact of compliance with NEPA in construction of the first segment) and initially undertaken with the use of federal funds.

With commendable candor, Judge Newman characterized the question of whether the cumulative effect of the various factors which I have discussed amounts to federal action as "close." Even if the facts as I have analyzed them do not mount up to a conclusive showing of "Federal action," Judge Newman's characterization serves to decide the case. This is so because § 102(1) of the National Environmental Policy Act, 42 U.S.C.A. § 4332, sets forth the rule of decision for close cases:

> The Congress authorizes and directs that, *to the fullest extent possible:* (1) the policies, regulations and *public laws* of the United States shall be *interpreted* and administered in accordance with the policies set forth in this Act. (Emphasis added.)

This Congressional directive to "interpret" the "laws" of the United States "in accordance with the policies" of NEPA "to the fullest extent possible" is not contained in the legislative history of the Act; it is part of the very statute itself. The question of whether the Danbury-New Milford segment is federal action may be a close one, but the application of NEPA depends on its resolution. In the immediate case, to give any effect to the policies of NEPA, much less to implement them to the "fullest extent possible," it is necessary to interpret NEPA to cover a controversy presenting a close question of "Federal" action.

While it might be argued that § 102(1), 42 U.S.C.A. § 4332(1), was directed at statutes other than NEPA, I would have little difficulty in holding that if all other federal statutes must be interpreted in accordance with the policies of NEPA to the fullest extent possible, NEPA itself should be interpreted

in accordance with its statutory policies to the fullest extent possible. In any event, this circuit has already interpreted the command of § 102(1), 42 U.S.C. A. § 4332(1), as applicable to NEPA itself. In Monroe County Conservation Council v. Volpe, 472 F.2d 693, 699 (2 Cir. 1972), the court stated:

> Congress directed that NEPA, which provided for an impact statement, was to be implemented to "the fullest extent possible," 42 U.S.C. § 4332.

In sum, in a close case where the impact of a project concededly has a "significant" impact on the environment and is admittedly a "major" undertaking, if, as in this case, the application of NEPA turns on a close question as to whether the project is "Federal," I think that § 102(1)'s direction to interpret the law in accordance with the Act's environmental policies to the fullest extent possible provides the rule of decision for the case and requires a holding that the project is "Federal."

I would reverse the district court and direct that permanent relief be granted on remand. I would have granted interim relief at the time of argument.