SCOTTSDALE MALL, an Ohio Limited
Partnership, Plaintiff,

v.

STATE OF INDIANA et al., Defendants.

No. IP 74–688–C.

United States District Court,
S. D. Indiana,
Indianapolis Division.

April 2, 1976.

Harrison Smith, Columbus, Ohio, William Wooden, of firm of Wooden, Stark, McLaughlin & Sterner, Indianapolis, Ind., for plaintiff.

Theodore Sendak, Atty. Gen. of Indiana by Anthony J. Metz, III, Deputy Atty. Gen., James Young, U. S. Dist. Atty. by Thomas L. Bose, Asst. U. S. Atty., Indianapolis, Ind., for defendants.

## MEMORANDUM OPINION

NOLAND, District Judge.

Plaintiff herein is an Ohio limited partnership operating a shopping center complex in South Bend, Indiana, doing business as Scottsdale Mall. The defendants are the Indiana State Highway Commission (hereinafter ISHC) and its individual members

acting for and on behalf of the State of Indiana. See, Ind.Code 1976 §§ 8–13–3–7, 8–13–5–8, 8–13–5–12.

The general subject of this controversy encompasses the projected development of the by-pass around the southeast quadrant of the South Bend-Elkhart metropolitan area (hereinafter East By-Pass). This highway improvement would traverse a path from existing U.S. 31 South of South Bend, at the point where an existing federally funded by-pass of the southwest quadrant of South Bend intersects U.S. 31 (hereinafter West By-Pass), to a point on existing U.S. 20 east of Elkhart. The principal dispute herein focuses on the center line of one segment of the East By-Pass which bisects plaintiff's property near the western terminus of the project at U.S. 31.

As presently planned, a 3.8 mile segment of the East By-Pass from U.S. 31 east to State Road 331 (hereinafter First Segment) would intersect and sever plaintiff's property thereby permanently removing five hundred ninety-nine (599) parking spaces and rendering inoperative expansion of the complex inherent in its design. On June 11, 1974, plaintiff attempted to avoid these consequences by offering to transfer to the defendants a 20 acre parcel of land south of Scottsdale Mall and to provide waivers of damage claims from the plaintiff, its mortgagor and tenants, if the defendants would agree to relocate the center line of First Segment so that it traversed the adjacent twenty acre tract. This proposal has been styled "Alternate B" by the parties herein. The plaintiff asserts the acquisition cost of its property under the original design of the First Segment would be $2.4 million, while Alternate B would result in a gift to the State of land valued by plaintiff at $600,000.

After considering various alternatives, the ISHC advised the plaintiff on December 5, 1974, of the defendant's intention to proceed with the First Segment of the East By-Pass as originally proposed. As of that date, the defendants had maintained their option to obtain federal highway funds for construction of the First Segment by programming this section of highway for such assistance as required by federal statute and regulations.

The plaintiff then sought a permanent injunction in this Court prohibiting the defendants from taking further action in connection with the First Segment on the grounds that (1) ISHC had failed to comply with the National Environmental Policy Act, 42 U.S.C. § 4321 et seq. (hereinafter NEPA) and the regulations issued pursuant thereto and had also failed to comply with the parallel state environmental statute, see Ind.Code 13–1–10–1 et seq. and (2) ISHC by refusing to accept Alternate B acted in an arbitrary and capricious manner detrimental to the taxpayers of Indiana and the City of South Bend. On January 20, 1975, the Court issued a temporary injunction prohibiting the defendants from proceeding further in this matter and restraining plaintiff from making any capital improvements on its property pending a final determination of the issues before the Court.

The defendants subsequently decided to construct the East By-Pass without federal assistance and took steps to de-program this project from further federal consideration. As a result, the federal government was dismissed as a party defendant herein. This cause then came on for a hearing on the defendant's motion to dismiss; the motion was treated as one for summary judgment as authorized by Rule 12(c), Federal Rules of Civil Procedure.

After taking jurisdiction in this matter, the Court proceeded to hear evidence on two issues: First, whether the defendants were required to comply with NEPA and Indiana environmental laws before proceeding with construction on the First Segment and second, whether the defendants acted in an arbitrary and capricious manner by refusing to accept Alternate B.

## BACKGROUND

Over twenty years ago ISHC initiated a study of projected highway use along U.S. 20 from a point east of the City of Elkhart to a point west of the City of South Bend. As a result, a four-lane limited access by-

pass highway was conceived to alleviate anticipated congestion through the center of the Elkhart-South Bend metropolitan area. The west leg of the by-pass (West By-Pass) from a point west of South Bend along U.S. 20 to a point south of the City along U.S. 31 has been completed.

The corridor for the aforementioned East By-Pass was established in 1967 after considerable public discussion regarding the general location of the proposed highway. Thereafter, two things occurred: First, private and public development in the area was undertaken with due notice of the proposed center-line of the East By-Pass and second, ISHC programmed segments of the East By-Pass, including the First Segment, for federal highway fund assistance.

In 1968 plaintiff purchased the site of the present Scottsdale Mall and proceeded to build the existing complex. Although plaintiff knew the highway corridor would bisect its property and thereby encroach upon future enlargement of the Mall, Scottsdale Mall was inherently designed for expansion. Four years later, the plaintiff acquired a twenty acre tract adjacent to its property ostensibly for the purpose of future expansion; however, these twenty acres eventually became the locus of the center-line of Alternate B and now stands in the vortex of this controversy.

## JURISDICTION

■ Federal courts have been empowered by Congress to take original jurisdiction over cases arising under the Constitution, laws, or treaties of the United States, 28 U.S.C. § 1331. In determining whether the allegations herein are sufficient to invoke federal subject matter jurisdiction, the Court has employed the analysis commanded by the Supreme Court:

> "[W]here the complaint, as here, is so drawn as to seek recovery directly under the . . . laws of the United States, the federal court . . . must entertain the suit. . . . The reason for this is that the court must assume jurisdiction to decide whether the allegations

state a cause of action on which the court can grant relief . . . ..

> "Jurisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which [plaintiffs] could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that the allegations . . . do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction." *Bell v. Hood,* 327 U.S. 678, 681–682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946).

■ The plaintiff contends ISHC has entwined the State with the federal government in the design of the First Segment of the East By-Pass so as to require an environmental impact statement (hereinafter EIS) approved by the Federal Highway Administration before construction begins. On the face of the complaint plaintiff has sufficiently invoked general federal jurisdiction requiring the Court to examine the pertinent parts of the National Environmental Policy Act and the Federal Aid Highway Act to determine whether the plaintiff is entitled to relief.

## ELIGIBILITY FOR FEDERAL HIGHWAY ASSISTANCE

Throughout the voluminous record before the Court, plaintiff has advanced two principal arguments for the proposition that an EIS must be completed before construction can begin on the First Segment. Plaintiff relies foremost on the proposition that the First Segment is *de facto* a federal highway project and accordingly cannot be withdrawn from federal funding to avoid the full panoply of NEPA's commands. Alternatively, plaintiff contends the entire South

Bend-Elkhart metropolitan area By-Pass is a federal project subject to NEPA because the West By-Pass was built with federal funds thereby prohibiting "segmenting" of the East By-Pass to avoid NEPA.

Before turning to the merits of the plaintiff's claims, the Court believes it would be helpful to examine how national policy designed to protect the environment interacts with the complexities of the federal highway aid program.

The National Environmental Policy Act, 42 U.S.C. § 4321 et seq. embodies a declaration of Congressional policy requiring federal, state, and local governments to use all practical means, including financial assistance, to establish and maintain conditions wherein mankind and nature can exist without fear of mutual destruction. A key provision of NEPA directs the federal government to:

"(c) include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on—

(i) the environmental impact of the proposed action   .   .   .."

42 U.S.C. § 4332.

Pursuant to NEPA the Federal Highway Aid Program, 23 U.S.C. 101 et seq. requires each State Highway Agency in designing a highway project eligible for federal funds, 23 C.F.R. § 771.4(a) to complete an EIS "during the location stage, prior to the selection of a particular location." 23 C.F.R. § 771.5(b). Thus, a State Highway Commission's failure to complete an EIS as directed by Federal statute and regulation prohibits the Federal Highway Administration (hereinafter FHWA) from authorizing federal funds for any proposed highway construction.

A State Highway Commission preserves its eligibility for federal highway assistance by complying with each of the three phases of the Federal Highway Act. Successful completion of each stage of the application process is required before a state can timely request federal money from the FHWA; however, Congress has reserved to each state the right ultimately to determine for itself which projects shall be federally funded.

"The authorization of the appropriation of Federal funds or their availability for expenditure shall in no way infringe on the sovereign rights of the States to determine which projects shall be federally financed. The provisions of this chapter provide for a federally assisted state program."

23 U.S.C. § 145.

During the first phase of the application process, a state designates a proposed highway project as falling into one of several highway systems, i. e., Federal Aid Primary, Federal Aid Secondary, Federal Aid Urban, or Federal Aid Interstate. 23 U.S.C. § 103. Thereafter a state may program a project for federal funds. 23 U.S.C. § 105. At this second stage, funds may be programmed for preliminary engineering studies, right-of-way surveys, right-of-way acquisition, and actual construction.

Programming under § 105 is not a commitment by the federal government to provide federal funds for highway construction, nor is it an application by the state for a commitment of federal funds. Rather, § 105 programming is a budgeting mechanism of the federal government wherein each state earmarks its share of the annual Congressional highway funding authorization, thereby reserving federal money for potential state use. *Movement Against Destruction (MAD) v. Volpe,* 361 F.Supp. 1360 (D.Md.1973), *aff'd per curiam,* 500 F.2d 29 (4th Cir. 1974).

The final step and critical stage in a state's application for Federal Highway Aid funds occurs when a Highway Commission submits plans, specifications and estimates (hereinafter P.S. & E.) for approval by the Secretary of Transportation. 23 U.S.C. § 106(a). P.S. & E. approval followed by FHWA funding authorization is the point at which a proposed state highway project becomes irrevocably federal in nature, *Monroe County Conservation Council v. Volpe,*

472 F.2d 693 (2nd Cir. 1972); *Citizens For A Balanced Environment v. Volpe,* 376 F.Supp. 806 (Conn.1974) *aff'd,* 503 F.2d 601 (2nd Cir. 1974); *Steubing v. Brinegar,* 375 F.Supp. 1158 (W.D.N.Y.1974); *Movement Against Destruction (MAD) v. Volpe, supra,* and cannot be withdrawn from federal consideration simply to avoid NEPA. *San Antonio Conservation Society v. Texas Highway Dept.,* 446 F.2d 1013 (5th Cir. 1971).

## NEPA

▮ Under federal statutes and regulations, a state highway commission cannot receive federal funds for a major federal-state highway project unless all the procedural requirements of NEPA have been met. See 42 U.S.C. § 4332 and 23 C.F.R. § 771.5(b), *supra.* In order to enforce the EIS requirements of NEPA, a plaintiff has the burden of proving the proposed highway addition is a major federal project within the meaning of NEPA and the Federal Highway Aid Act. Judicial enforcement of the federal legislative scheme to control man's intrusion into nature cannot be obtained unless a plaintiff demonstrates the contested highway project has been programmed for federal funding and subsequently approved by state and federal authorities for federal highway aid money. *City of Highland Park v. Train,* 519 F.2d 681, 694 (7th Cir. 1975).

▮ The Court has closely examined the twenty eight exhibits plaintiff introduced into evidence at trial as well as the exhibits attached to the pleadings and has concluded the only federal participation in the East By-Pass occurred during the programming stage of the project's development. ISHC's involvement with the federal government was consistent with the legislative scheme designed to maintain a state's option to ultimately request federal highway funds. To this end the federal government expended $162,000 for preliminary engineering studies and right-of-way acquisition which ISHC repaid when it withdrew the East By-Pass from federal highway aid consideration. *See,* affidavit of George D. Gibson, Jr., Division Administrator, FHWA, December 30, 1975. The Court holds that an expenditure of $162,000 for preliminary engineering studies is *de minimus* federal involvement which does not render this highway project a major federal action subject to NEPA.

In reaching this conclusion the Court specifically rejects plaintiff's contention that completion of a majority of the steps depicted on ISHC's work flow chart for the First Segment (plaintiff's Exhibit 2), including location approval, demands characterization of this project as a major federal highway. Plaintiff's reliance on *La Raza Unida v. Volpe,* 488 F.2d 599 (9th Cir. 1973), *cert. denied* 417 U.S. 968, 94 S.Ct. 3171, 41 L.Ed.2d 1138 (1974) in support of its location theory as the point of federal involvement is misplaced. As the Seventh Circuit has pointed out, *La Raza* was decided under a federal relocation statute and does not control issues arising under NEPA and the Federal Highway Aid statutes. *City of Highland Park v. Train, supra,* at 695.

▮ Under present federal law ISHC's failure to obtain an EIS at the location stage has closed the door to possible federal funding 23 C.F.R. § 771.5(e), a right reserved to each State Highway Commission. 23 U.S.C. § 145. It would be impractical for the federal government to expend human and financial resources to complete EIS studies on projects that cannot possibly receive federal funding. NEPA only applies to *major* federal highway projects and not *any* highway project; therefore, ISHC's decision not to comply with the eligibility procedures necessary to maintain their option to receive federal highway funds cannot have the paradoxical effect of producing federal involvement. *Citizens For A Balanced Environment v. Volpe, supra,* 376 F.Supp. at 813; *River v. Richmond Metropolitan Authority,* 359 F.Supp. 611, 634 (E.D.Va.1973), *aff'd per curiam,* 481 F.2d 1280 (4th Cir. 1973); *Indian Lookout Alliance v. Volpe,* 484 F.2d 11, 16 (8th Cir. 1973).

The plaintiff's alternative theory for application of NEPA focuses on the assertion that the appropriate length of highway for

an EIS in this case is the entire South Bend-Elkhart Metropolitan Area By-Pass. The plaintiff contends an EIS must cover the whole project because the West By-Pass was constructed with federal funds and ISHC's decision to build the East By-Pass with state funds results in an impermissible "segmenting" of a federal highway project to avoid federal environmental policy.

The Court does not dispute plaintiff's position that a state highway project authorized for federal participation by the Secretary of Transportation must comply with NEPA. NEPA does not apply, however, to projects approved and constructed before January 1, 1970, the effective date of the Act. *See, Investment Syndicates, Inc. v. Richmond,* 318 F.Supp. 1038 (Or. 1970); *Brooks v. Volpe,* 319 F.Supp. 90 (W.D.Wash.1970); *Pennsylvania Environmental Council, Inc. v. Bartlett,* 315 F.Supp. 238 (M.D.Pa.1970). *See also, Swain v. Brinegar,* 517 F.2d 766 (7th Cir. 1975). Thus, the West By-Pass is not subject to consideration as a length of highway for EIS purposes.

The law is clear that as a partner to authorized federal participation in a highway project, a State cannot subvert national environmental policy by shifting federal funds from an authorized project to avoid the ramifications of NEPA's commands. *San Antonio Conservation Society v. Texas Highway Department, supra,* at 1027. In *San Antonio,* the Texas State Highway Department attempted to withdraw the middle segment of a highway project from federal consideration after the Secretary of Transportation *authorized* federal participation in construction of the two end segments of the project. Notwithstanding the plaintiff's arguments to the contrary, the rule laid down in *San Antonio* does not apply to the instant case because the Secretary of Transportation never authorized federal participation in construction of any segment of the East By-Pass. Furthermore, the Assistant Chief Engineer of the Highway Department, Mr. Walter Frick, testified that the project was not de-programmed for fear the proposed align-ment of the First Segment could not withstand EIS scrutiny.

If ISHC wishes to re-open its option to request federal highway funds for the project contested herein, the FHWA has indicated the appropriate length of highway for EIS purposes encompasses the entire East By-Pass from a point on U.S. 31 south of South Bend to a point on U.S. 20 east of Elkhart. (Plaintiff's Exhibit 25). The Court believes this length of highway fully meets the standard set forth in federal regulations:

> "(a) A highway section should be as long as practicable to permit consideration of environmental matters on a broad scope and meaningful evaluation of alternatives. A highway section may include, when appropriate, completed as well as uncompleted portions of the highway and one or more future highway projects. Piecemealing proposed highway improvements in separate EIS's is to be avoided. The highway section identified in the EIS or negative declaration should include the total length of highway between logical termini even though only a short length of the total identified highway section is proposed for construction or reconstruction within the multi-year work program."

23 C.F.R. 771.5(a)

The Court takes judicial notice of the existence of U.S. 31 and U.S. 20 as major national highways which qualify as logical termini for a By-Pass around a major metropolitan area. In addition, the East By-Pass meets the test raised by plaintiff that a highway section for an EIS be "as large as is feasible under present construction and financing practices and at least be *independently* supportable by meaningful terminal points." *Indian Lookout Alliance v. Volpe,* 484 F.2d 11, 19 (8th Cir. 1973) (emphasis added). The testimony of Walter Frick, George Gibson, and evidence introduced at trial (Plaintiff's Exhibit 18) all support the conclusion that the projected daily volume of traffic on the East By-Pass, 15,000 vehicles today and 30,-000 in the year 1991, justifies a character-

ization of the project as one which has independent significance.

## ARBITRARINESS

The real dispute in this cause is ISHC's failure to adopt Alternate B. Plaintiff has accused the defendants of acting in an arbitrary and capricious manner by rejecting the plaintiff's proposal and deciding to begin construction on the First Segment as originally proposed.

The Court has concluded the East By-Pass has never been a federal highway project and therefore there is no issue before the Court regarding the reasonableness or arbitrariness of a federal administrator's action. *See, Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1970); *Swain v. Brinegar,* 517 F.2d 766 (7th Cir. 1975). The question remains, however, whether the Indiana State Highway Commission acted in an arbitrary and capricious manner by refusing to adopt Alternate B. The Court notes that the legislature of this state has charged ISHC with the responsibility of promoting the economic growth and welfare of Indiana through a vigorous and competent program of public highway development. Ind. Code 1976 § 8–13–1–2. ISHC has been granted the power of eminent domain to establish highway locations, Ind.Code 1976 § 8–13–3–7; however, the exercise of said power is subject to court review. Ind.Code 1976 § 34–11–1–5.

■ Although courts may engage in the review of decisions concerning highway location, this Court does not have the authority to act as a "super" Department of Transportation which disregards the considerable expertise of a state highway commission and realigns highway corridors according to its own notion of fair play. On review of a highway placement, a federal court:

> ". . . is not empowered to substitute its judgment for that of the state or federal highway authorities. Rather, the review is for the limited purpose of determining whether the responsible officials acted with a full, good-faith consideration of their legal obligations and whether the

actual balance of costs and benefits struck by the officials was arbitrary . . . ." *Swain v. Brinegar,* 378 F.Supp. 753, 757–758 (S.D.Ill.1974), reversed on other grounds, 517 F.2d 766 (7th Cir. 1974).

■ Under the circumstances presented herein, ISHC's failure to rise to plaintiff's expectations regarding the attractiveness of Alternate B has not approached a level of action which can be characterized as arbitrary or capricious or contrary to law. While plaintiff may disagree with ISHC's decision to proceed with the First Segment, the facts of this case show that decision was the result of expert engineering studies and consideration of the alternatives by the ISHC staff.

In opting against realignment of the center-line of the First Segment, the defendant considered: The Annual rate of inflation for highway construction (38%); the user-benefit ratio of the proposed highway; the impact of impoundment of federal highway funds; the delays which would result from pursuing either the First Segment or Alternate B as a federally funded project; drainage and grade problems created by Alternate B; the costs of utility relocation and the delays attendant thereto; the cost of condemnation proceedings under Alternate B; the integrity and credibility of ISHC; and the delay which would result from redesign of the First Segment to accommodate Alternate B.

If the Indiana State Highway Commission had precipitously rejected the plaintiff's alternative without discussing the relative merits of the proposal, they could be said to have acted arbitrarily. On the other hand, however, it was the plaintiff and not the defendants who built Scottsdale Mall knowing it to be in the path of a proposed highway. The defendants did not exceed the bounds of reasonableness when they determined that additional delay and expense prohibited proceeding with Alternate B either as a state or federal highway project. The overwhelming evidence before the Court demonstrates the defendants act-

ed with utmost good faith throughout their deliberations and dispatched their duty to the people of Indiana with a constancy of effort.

For the reasons set forth hereinabove, the Court now DISSOLVES the preliminary injunction previously entered in this cause and the Court, after trial of the issues, now finds in favor of the defendants and against the plaintiff. The findings of fact and conclusions of law have not been specifically set forth but are included in the body of the above memorandum as provided by Rule 52, Federal Rules of Civil Procedure.