**Abraham SCHERR et al., Plaintiffs-Appellees,**

v.

**John VOLPE et al., Defendants-Appellants.**

**No. 72-1113.**

United States Court of Appeals, Seventh Circuit.

Argued May 23, 1972.

Decided Aug. 4, 1972.

Robert W. Warren, Atty. Gen., Richard E. Barrett, E. Gordon Young, Asst. Attys. Gen., John O. Olson, U. S. Atty., Madison, Wis., for defendants-appellants.

Walter L. Harvey, Madison, Wis., amicus curiae.

Frederick W. Miller, Allan R. Koritzinsky, Donald W. Large, Madison, Wis., for plaintiffs-appellees.

Before Mr. Justice CLARK *, SPRECHER, Circuit Judge and CAMPBELL, Senior District Judge.**

WILLIAM J. CAMPBELL, Senior District Judge.

This ecology case arises under the National Environmental Policy Act ("NEPA") of 1969. 42 USC § 4321 et seq. On September 7, 1971 the five individual plaintiffs who reside in the Village of Hartland, Wisconsin, filed suit against John Volpe, United States Secretary of Transportation; Norman Clapp, Wisconsin Secretary of Transportation; William R. Redmond, Chairman, Wisconsin Division of Highways; and S. T. Banaszak, District Engineer, Wisconsin Division of Highways, charging that these officials failed to comply with the procedural requirements of Section 102(2) (C) of NEPA, 42 U.S.C. § 4332(2) (C), with respect to the upgrading of a section of State Highway 16 from Pewaukee to Oconomowoc, Wisconsin. Following a hearing on the plaintiffs' motion for a preliminary injunction, the district judge on December 7, 1971, 336 F.Supp. 882, enjoined the above officials from further construction of the highway until the requirements of NEPA had been complied with. The Wisconsin highway officials appeal from the entry of the preliminary injunction.

The record discloses that the State of Wisconsin proposed to convert Highway 16 from its present status as a two lane conventional highway to a four lane freeway in northwestern Waukesha County, where the plaintiffs reside, between the communities of Oconomowoc and Pewaukee, a length of approximately twelve miles. It had been determined that the present highway system in this area had become deficient in providing safe and reasonable operating services to the motorists of southeastern Wisconsin. The upgrading project requires the acquisition of additional right-of-way through-out in order to provide for adequate width, frontage road and interchange construction. The project is part of a Federal-Aid highway program and is jointly financed and supervised by the Federal Highway Administration and the State of Wisconsin.

NEPA became effective on January 1, 1970. Although the Highway 16 project had been in the planning stages for many years, the design hearing was not held until June 30th, 1970, several months after the effective date of the Act. Final federal approval of the design occurred on January 26, 1971. On August 24, 1971 construction contracts were accepted in an amount exceeding one million dollars for a 4.1 mile segment of the entire project. Actual construction of this portion commenced on November 22, 1971.

In its findings of fact the district court noted that the Highway 16 project is located in the Lake Kettle Moraine area, the site of "eleven lakes, two major rivers and their watershed and flood plains, wetlands located just west of the Village of Pewaukee and in and around the county park at Forest and Grass Lakes, the Kettle Moraine forest and other woodlands, wild life habitats, ice age geological formations and rough topography unique to the Kettle Moraine area." Regarding the environmental consequences of the construction project, the district court specifically found that the immediate effects would include an alteration of natural wild life habitats, stripping of forest land with attendant erosion, increased levels of noise, air and water pollution, and interference with the natural beauty and recreational value of the area.

The ultimate finding of the district court upon which the injunction was premised was that the defendants had failed to file an environmental impact statement of the kind described in and required by § 102(2) (C) of NEPA. The defendants acknowledge that no im-

---

* Associate Justice Tom C. Clark, United States Supreme Court, Retired, is sitting by designation.

** Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

pact statement was filed but argue that the Highway 16 project was not a "major federal action significantly affecting the quality of the human environment" and that therefore it was not necessary to satisfy the procedural requirement of filing an impact statement. Alternatively, the defendants maintain that notwithstanding the absence of an impact statement, they have complied with all of the substantive and procedural requirements of the National Environmental Policy Act of 1969. A third attack on the entry of the preliminary injunction arises from the defendants' contention that the plaintiffs have made no showing that the construction of the Highway 16 project would result in irreparable harm to the environment. The defendants further claim that Section 102(2) (C) is not applicable to the Highway 16 project because it was in progress prior to January 1, 1970, the effective date of the Act. As a final ground of error the defendants maintain that the district court abused its discretion in refusing to require the plaintiffs to post a security bond as a prerequisite to the granting of the preliminary injunction.

█ We start with the observation that our function in reviewing the entry of a preliminary injunction is a limited one. Appellate tribunals may set aside the issuance of such injunctions only where it can be said that the discretion vested in the district court with respect to these matters has been improvidently exercised. See Particle Data Laboratories, Inc. v. Coulter Electronics, Inc., 420 F.2d 1174, 1178 (7th Cir. 1969). The circumstances under which motions for preliminary injunction are made and heard illustrate the reasons for the narrow scope of review. The district judge is typically presented with an abbreviated set of facts, "requiring a delicate balancing of the probabilities of ultimate success at the final hearing with the consequences of immediate irreparable injury which could possibly flow from the denial of preliminary relief." See United States Steel Corp. v. Fraternal

Ass'n of Steelhaulers, 432 F.2d 1046, 1048 (3d Cir. 1970). Absent a clear abuse of discretion, the normal course of wisely committing this balancing process to the district judge will not be disturbed. Against this background we proceed to the merits of the controversy.

The broad substantive policies and objectives of NEPA are contained in § 101 thereof. There the Congress expressed its basic goal that the federal government should strive for the protection of environmental values. Environmental protection was not established as an exclusive goal, rather the Congress restructured priorities in such a way that the ecological consequences of a federal action must now be given consideration. Thus § 101(b) of NEPA provides that "it is the continuing responsibility of the Federal Government to use all practical means, consistent with other essential considerations of national policy," to "assure for all Americans safe, healthful, productive, and esthetically and culturally pleasing surroundings," to attain "an environment without degradation", to "preserve important historic, cultural, and natural aspects of our national heritage," and to insure that "each person should enjoy a healthful environment."

The method by which the national goals would be achieved was left undefined in Section 101. However, Congress did not simply provide us with a promise incapable of realization. Important and much less flexible procedural requirements designed to insure that federal officials meet the sweeping Congressional commitment to the environment are contained in Section 102 of NEPA. The pertinent portions of Section 102 read as follows:

"The Congress authorizes and directs that, *to the fullest extent possible:* . . . (2) all agencies of the Federal Government shall—

(C) include in every recommendation or report on proposals for legislation and other *major Federal actions significantly affecting the quality of the human environment,*

a detailed statement by the responsible federal official on—

(i) the environmental impact of the proposed action,

(ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,

(iii) alternatives to the proposed action,

(iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and

(v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented.

Prior to making any detailed statement, the responsible Federal official shall consult with and obtain the comments of any Federal agency which has jurisdiction by law or special expertise with respect to any environmental impact involved. Copies of such statement and the comments and views of the appropriate Federal, State, and local agencies, which are authorized to develop and enforce environmental standards, shall be made available to the President, the Council on Environmental Quality and to the public as provided by section 552 of Title 5, [United States Code] and shall *accompany the proposal through the existing agency review processes;*" [emphasis supplied].

Through the enactment of these procedural requirements the Congress has not only permitted but has compelled the responsible federal agencies to take environmental values into account. See Calvert Cliffs' Coord. Com. v. United States Atomic Energy Com'n., 449 F.2d 1109, 1112 (D.C.Cir. 1971). Not only must the environmental consequences of a particular action be considered, but

Section 102 requires also that these consequences be weighed and balanced against other considerations, such as financial or social, which may be involved.

The environmental impact statement required by Section 102 is designed to insure that this balancing analysis is given its fullest effect. *Pro forma* compliance with the substantive guidelines of Section 101 simply will not suffice. Section 102 of NEPA provides that its procedures be implemented and carried out "to the fullest extent possible." Thus the somewhat flexible and general guidelines articulated in Section 101 are not to be found in its companion Section 102. Absent a conflict of statutory authority,[1] the responsible federal officials must give full consideration to the environmental consequences of a major federal action significantly affecting the environment. The procedural steps outlined in Section 102 apply notwithstanding considerations of administrative difficulty, delay or economic cost. Calvert Cliffs' Coord. Com. v. United States Atomic Energy Com'n, 449 F.2d 1109, 1115 (D.C.Cir. 1971)

On January 21, 1971 the Division of Highways of the Department of Transportation of the State of Wisconsin determined that an environmental statement of the kind described in Section 102 of NEPA was not required with respect to the Highway 16 project. The Federal Highway Administration concurred in this determination. Both in the district court and on appeal, the defendants have contended that this determination by the responsible officials was not shown to be arbitrary and capricious by the plaintiffs and that therefore the injunction was improvidently entered inasmuch as no violation of the Act had been demonstrated. Although the record is silent as to the basis of this decision by the highway officials, the defendants have maintained throughout that they enjoy the untrammeled discretion to determine whether a particular project is "major" and whether it is a project "signifi-

1. See Section 104 of NEPA. 42 U.S.C. § 4334.

cantly affecting the quality of the human environment." The argument continues that the officials therefore determined that the project was not major and was not one significantly affecting the environment and that this is the reason no impact statement was filed. Thus, the defendants conclude, unless it can be shown that this determination was arbitrary or capricious, no injunction should issue.

The district judge specifically rejected the contention that these officials possess such broad discretion under Section 102 of NEPA. Judge Doyle reasoned that although the officials must decide in the first instance whether an impact statement is required, their decision is subject to broad judicial review. Implicit in the judge's ruling is the recognition that not all federal actions will require the preparation of an environmental statement. Some actions may be so small and so tenuously related to the environment that it cannot be fairly said that NEPA applies. The judge however believed that when the agency's failure is challenged, it is the responsibility of the judiciary to construe the statutory standards and thereby decide whether the agency violated the Congressional command.

■■ We find it unnecessary in the circumstances of this case to determine the extent of an agency's discretion, if any, under Section 102 of NEPA. Based on the state of the record before us we agree with the district court's alternative determination that even if the Federal Highway Administration possessed such discretion, it was most certainly abused here. First we again observe that the record is absolutely barren of any indication of the basis upon which the agency

made its determination that no impact statement was required. This is not to suggest that in every case arising under this section that the responsible federal agency must articulate in writing the reasons why no environmental statement was filed. Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 417, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). However where there is no administrative record which would facilitate a full review of the administrative action involved, such findings would certainly be preferred and would greatly assist the court in its reviewing function.

■ Absent the benefit of an administrative record, we must confine ourselves to the language of the statute itself and to the applicable administrative memoranda issued by the United States Department of Transportation. We begin with the Federal Highway Administration Policy and Procedure Memorandum P.P.M. 90–1 dated August 24, 1971.[2] Paragraph 1 of Appendix F of P.P.M. 90–1, designated as "Evaluating Highway Section Environmental Effects", provides that an environmental statement should be prepared and processed for highway sections which are classified as major actions and which are likely to significantly affect the quality of the human environment. This is of course consistent with the requirements of NEPA. Paragraph 2 of Appendix F of P.P.M. 90–1 states as follows:

"the following should be used to determine whether a proposal to construct or improve a highway section is a major action. . . .

(b) Major upgrading of an existing highway section resulting in a functional characteristic change (e. g., a

2. P.P.M. 90–1 was not transmitted to the federal agencies until October 24, 1971, which followed the final federal approval of the Highway 16 project but preceded the commencement of actual construction. The defendants in this case, some of whom had access to earlier drafts of the final memorandum, do not contend that it does not represent a reasonable interpretation of the statute at the time these defendants determined that the Highway 16 project was not a "Major Federal Action significantly affecting the quality of the human environment." Thus we agree with the district judge that this memorandum furnishes the appropriate guideline for assessing the actions of the defendants.

local road becoming an arterial highway). Such changes usually result by adding lanes, interchanges, access control, medians, etc., and require extensive right-of-way acquisition and construction (grading, base, paving, bridges, etc.) which have the potential of significantly affecting the environment."

It should be obvious from a reading of the memorandum that the Highway 16 project qualifies as a major federal action. Lanes and interchanges will be added, access control will be altered, and additional right-of-way must be acquired. Also, the construction itself will involve extensive grading and paving. Thus by the express terms of the defendants' own regulation, Highway 16 constitutes a major federal action.

■ The second step in the analysis is whether the project is one which will significantly affect the quality of the human environment. Paragraph 3 of Appendix F of P.P.M. 90–1 sets forth criteria for determining whether a major project "significantly affects the environment." These include significant adverse impact on natural ecology; highly controversial projects; disruption of an established community or planned development; and inconsistent with national environmental standards. In its findings of fact, which we hold are not clearly erroneous, the district court determined that: "the immediate effects of the construction now in progress include damage to present natural habitats of various wild animals; stripping of forested land with attendant erosion problems; increased levels of noise, air and water pollution; impingement upon the aesthetic natural beauty and recreational value of the area." Although these findings are earnestly disputed by the defendants, we are satisfied on this record that the Highway 16 project is one that has a significant impact on the quality of the human environment in that area. This is not to say that there will be irreparable damage to the environ-

ment nor that the environmental considerations outweigh the other considerations which attend the planning and construction of a federal highway. We decide only that the project will have a significant impact on the environment and that the consequences to the environment should, as mandated by NEPA, receive the proper consideration by the highway officials involved.

■ The second contention advanced by the defendants could be characterized as an argument of substantial compliance. Even though no impact statement was filed, NEPA has been complied with, the defendants say, because environmental considerations were expressly taken into account during the planning and development of Highway 16. The defendants seem to suggest that two reports prepared by Wisconsin state officials represent a lawful substitute for the Section 102 impact statement. One of the reports, called "Highway 16 and the Environment", was compiled by the State Department of Transportation without consultation with the other federal agencies having environmental interests. The report was prepared within a week after the Governor of Wisconsin directed its preparation, and the construction contracts for the project were signed within one day after the report had been released. Thus, unlike environmental impact statements, this state report was never made available to the public or to those federal agencies required to consider such reports by NEPA. The second report, called "Southeastern Wisconsin Regional Planning Commission Land Use and Transportation Plan", by the defendants' own description gives at best a very minimal consideration to environmental ramifications. Neither plan evidences the kind of balancing of considerations implicated in the requirements of Section 102 of NEPA. No federal agency, including the Department of Transportation and the Federal Highway Administration, was consulted during the preparation of either of these reports. Thus the federal agency responsible for

this project cannot be said to have met its obligation under the Act. See Calvert Cliffs' Coord. Com. v. United States Atomic Energy Com'n., 449 F.2d 1109, 1123 (D.C.Cir. 1971).

■ Next the defendants submit that the injunction should not have issued inasmuch as the plaintiffs failed to show that the construction of Highway 16 would result in irreparable harm to the environment. The defendants' argument in this respect proceeds from the premise that even though there be a clear violation of the Act, even though, as the district court stated, the responsible federal agency failed to "assemble all pertinent information, to subject it to expert scrutiny and to articulate clearly and in writing an evaluation of the various benefits and costs which are being balanced", that no judicial relief may be afforded the plaintiffs absent a showing on their part that the project would be damaging to the environment. We think the district court's rejection of this theory is particularly relevant: "to suggest that when the federal agencies flatly fail to perform this function, a plaintiff in a lawsuit such as this suit must perform it as a condition to obtaining injunctive relief is to suggest that one of the central purposes of the Act be frustrated." To accept the defendants' argument on this point would thwart the Congressional mandate by rendering impotent the procedural requirements of the National Environmental Policy Act of 1969. What this argument attempts to do is to shift the burdens of considering and evaluating the environmental consequences of particular federal actions from the agencies Congress intended to bear them to the public, the beneficiary of this legislation. If these agencies were permitted to avoid their responsibilities under the Act until an individual citizen, who possesses vastly inferior resources, could demonstrate environmen-

tal harm, reconsideration at that time by the responsible federal agency would indeed be a hollow gesture. See Arlington Coalition on Transportation v. Volpe, 458 F.2d 1323 (4th Cir. 1972); Calvert Cliffs' Coord. Com. v. United States A. E. Com'n., 449 F.2d 1109, 1128 (D.C. Cir. 1971).

The kind of "irreparable harm" which must be shown in order to justify the issuance of a preliminary injunction in these cases can be found in the language of the Act itself. As stated in *Calvert Cliffs'*, "Section 102 of NEPA mandates a particular sort of careful and informed decision-making process and creates judicially enforceable duties." Here if the project were allowed to proceed after the plaintiffs had demonstrated a probability of success on the merits, this "careful and informed decision-making process" would be lost forever. In order to protect the rights of the plaintiffs to have the agency consider the environmental consequences of this project, the district court properly directed that a preliminary injunction issue during the pendency of the proceedings.

■ ■ The defendants also claim that Section 102 of NEPA does not apply to Highway 16 because this project was in progress prior to January 1, 1970, the effective date of the Act. Although the Act is not to be given retroactive effect,[3] it does apply, as the defendants recognize, to certain projects "ongoing" when the Act became effective. Considering the Congressional command that the Act be complied with "to the fullest extent possible", an ongoing project is subject to the requirements of Section 102 until it has reached that stage of completion where the cost of abandoning or altering the proposed project clearly outweigh the benefits which could flow from compliance with Section 102. Arlington Coalition on Transportation v. Volpe, 458 F.2d 1323, 1332 (4th

3. Arlington Coalition on Transportation v. Volpe, 458 F.2d 1323 (4th Cir. 1972); Pennsylvania Environmental Council, Inc. v. Bartlett, 454 F.2d 613 (3rd Cir. 1971); Brooks v. Volpe, 319 F.Supp. 90 (W.D. Wash.1970).

Cir. 1972). Here final federal approval for the project did not occur until over one year after the effective date of the Act. Actual construction was not commenced until almost two years later. Too, the defendants make no claim that they could not have satisfied the procedures outlined in Section 102. We hold, therefore, that the issuance of the preliminary injunction did not extend retroactive effect to NEPA.

■ The remaining issue concerns the defendants' contention that the district court abused its discretion in refusing to require the plaintiffs to post a security bond as a prerequisite to the granting of the preliminary injunction. Rule 65(c) of the Federal Rules of Civil Procedure provide as follows:

"No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. No such security shall be required of the United States or of an officer or agency thereof."

It has been held in this circuit that the failure of a district court to require a security under this rule before issuing a restraining order is not reversible error. Urbain v. Knapp Brothers Mfg. Co., 217 F.2d 810, 815 (6th Cir. 1954). Since the amount of the security rests within the discretion of the district judge, the matter of requiring a security in the first instance was recognized in *Urbain* as also resting within the discretion of the district judge. Considering this as well as the strong likelihood of success on the merits which the plaintiffs have demonstrated, we find that the district court did not abuse its discretion in failing to require the plaintiffs to post a security.

For the foregoing reasons, the judgment of the district court granting the preliminary injunction is affirmed.