WISCONSIN HERITAGES,
INC., Plaintiff,

v.

Patricia HARRIS, Ronald Gatton, John Kane, William Drew, and Marquette University, Defendants.

No. 78–C–632.

United States District Court,
E. D. Wisconsin.

Nov. 17, 1978.

William H. Lynch, Milwaukee, Wis., Daniel J. Steininger, Ebert & Ebert, Milwaukee, Wis., for plaintiff.

Ray J. Aiken, University Legal Counsel, Milwaukee, Wis., for Marquette University.

James B. Brennan, City Atty., James E. Fitzgerald, Asst. City Atty., Milwaukee, Wis., for Redevelopment Authority and William Ryan Drew.

Joan F. Kessler, U. S. Atty., Milwaukee, Wis., for HUD.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

The plaintiff has filed a motion for a preliminary injunction prohibiting the defendants from authorizing or permitting the demolition of the Elizabeth Plankinton mansion in Milwaukee, Wisconsin. The defendant Redevelopment Authority of the city of Milwaukee has filed a motion to dismiss. The defendant Marquette University has filed motions alternatively seeking an injunction on different terms than those proposed by the plaintiff; dismissal of the action; or an order requiring the plaintiff to make the complaint more definite and certain.

The plaintiff filed this action alleging that the defendants failed to comply with several federal and state environmental and historic preservation laws in connection with the contemplated demolition of the Elizabeth Plankinton mansion; the National Historic Preservation Act of 1966, as amended, 16 U.S.C. § 470, *et seq.*; the National Environmental Policy Act of 1969, 42 U.S.C. § 4321 *et seq.*; the Wisconsin Historic Preservation Program, § 44.22, Wis.Stat.; and the Wisconsin Environmental Policy Act, § 1.11, Wis.Stat. The plaintiff seeks injunctive and declaratory relief, claiming jurisdiction under 28 U.S.C. § 1331, the Administrative Procedures Act, 5 U.S.C. § 551 et seq., 28 U.S.C. § 1361 and 28 U.S.C. §§ 2201 and 2202.

The plaintiff, Wisconsin Heritages, Inc., is a nonprofit Wisconsin corporation organized, in part, to preserve buildings of historical and architectural value. The defendants include the secretary of the United States Department of Housing and Urban Development and various of her subordinates (collectively referred to herein as HUD), the Redevelopment Authority of the city of Milwaukee (RAM), and Marquette University. HUD is responsible for administering federal assistance to urban renewal programs. RAM is an independent public body, created under § 66.431, Wis.Stat., by virtue of a resolution of the common council of the city of Milwaukee, and it is responsible for preparing and implementing urban renewal plans for the city of Milwaukee. Marquette is the present owner of the land on which the Elizabeth Plankinton mansion is located.

The Elizabeth Plankinton mansion, an example of Richardson Romanesque architecture, was designed in 1888 by Thomas Mix, a designer of Victorian buildings. In 1910, the Knights of Columbus purchased the mansion and has occupied it ever since. A structure was added to the mansion some time after its initial construction and presently abuts the north side of the mansion. On January 31, 1975, the mansion was determined to be eligible for listing in the national register of historic places established under 16 U.S.C. § 470a. On January 1, 1976, the mansion was listed in the national register.

In February, 1965, RAM applied to HUD for a loan and capital grant under Title 1 of the Housing Act of 1949, 42 U.S.C. § 1441 *et seq.*, to help finance an urban renewal project to be developed in cooperation with Marquette University. The area covered by the plan included a parcel of land upon which the mansion is located, and the plan called for clearance of the mansion from its present site. HUD approved the loan and grant application on July 14, 1965 and entered into a loan and grant contract on August 3, 1965. The contract was revised on several occasions between November, 1968, and September, 1974, to reflect increases in the loan and grant amounts.

On June 22, 1967, Marquette University and RAM entered into an agreement entitled "contract for Sale of Land for Private Development," which included the sale of the mansion site to Marquette. Under the agreement, the mansion site was scheduled to be transferred to Marquette University in 1971. Apparently due to resistance from the Knights of Columbus, however, the mansion and the land on which it was located were not sold to RAM until 1973. Marquette and RAM entered into a supplemental agreement on June 19, 1975, which provided that Marquette would accept title to the mansion site without prior clearance by RAM of the mansion. Marquette also agreed to take title subject to a lease to the Knights of Columbus to expire on June 30, 1978. On June 19, 1975, the date of the supplemental agreement, Marquette received title to the mansion site.

On August 29, 1975, HUD and RAM made a conditional closeout of accounts for the urban renewal project loan and capital grant. A cover letter accompanying the closeout documents from HUD to RAM stated that the sums of $55,000 and $21,000 would remain open to cover items relating to the conditional closeout, apparently referring to the costs of demolition of the mansion and certain unspecified costs of relocation.

When the lease to the Knights of Columbus expired on June 30, 1978, RAM took bids for the demolition of the mansion in fulfillment of its contractual obligation to Marquette. The plaintiff then commenced this action, seeking a temporary restraining order. The motion was denied in an order dated October 6, 1978, because of the plaintiff's failure to join Marquette University as a party and because of my doubt about the plaintiff's probable success on the merits. Thereafter, the plaintiff joined Marquette and filed the instant motion for a preliminary injunction.

■ To obtain an injunction, the plaintiff must show (1) that it has no adequate remedy at law and that it will suffer irreparable harm without an injunction; (2) that the threatened injury to the plaintiff outweighs the harm an injunction will inflict on the defendant; (3) that the plaintiff has a reasonable likelihood of success on the merits; and (4) that an injunction will not disserve the public interest. *Fox Valley Harvestore, Inc. v. A. O. Smith Harvestore Products, Inc.*, 545 F.2d 1096, 1097 (7th Cir. 1976).

The defendants do not challenge the plaintiff's assertion that it will suffer irreparable harm unless the defendants are enjoined from demolishing the mansion. The defendants dispute whether the plaintiff has a reasonable likelihood of success on the merits and whether the balance of hardship tips in the plaintiff's favor. The defendants urge that the various statutes and regulations relied upon by the plaintiff are inapplicable in this case. RAM and Marquette argue also that they will suffer hardship if an injunction is issued. I turn first to the question whether the plaintiff has a reasonable likelihood of success.

The plaintiff alleges that HUD has failed to comply with the National Historic Preservation Act (NHPA), 16 U.S.C. § 470 *et seq.*, and that until it does so no federal funds may be approved for expenditure. The NHPA was enacted to require the federal government to accelerate its historic preservation programs and to encourage such efforts on state, local and private levels. 16 U.S.C. § 470. To assist in these efforts, the act authorizes the secretary of the interior to maintain a national register of structures and to grant funds for preservation of such structures. 16 U.S.C. § 470a. The act is administered by an advisory council on historic preservation. 16 U.S.C. §§ 470i and 470j.

Section 470f of NHPA provides as follows:

"The head of any Federal agency having direct or indirect jurisdiction over a proposed Federal or federally assisted undertaking in any State and the head of any Federal department or independent agency having authority to license any undertaking shall, prior to the approval of the expenditure of any Federal funds on the undertaking or prior to the issuance of any license, as the case may be, take into account the effect of the undertaking on any district, site, building, structure, or object that is included in or eligible for inclusion in the National Register. The head of any such Federal agency shall afford the Advisory Council on Historic Preservation established under sections 470i to 470n of this title a reasonable opportunity to comment with regard to such undertaking."

As adopted on October 15, 1966, the statute applied only to buildings, structures or objects included in the national register of historic places. In 1976, the statute was amended to the form set forth above so as to apply also to buildings, structures, or objects "eligible for inclusion" in the national register.

■ The courts which have considered whether NHPA applies to buildings included in urban renewal projects have held that the act does not apply unless the building was actually included in the national register of historic places at the time the urban renewal agreement was signed. *Hart v. Denver Urban Renewal Authority*, 551 F.2d 1178 (10th Cir. 1977); *Committee to Save the South Green v. Hills*, 7 ELR 20061 (D.Conn.1976); *Save the Courthouse v. Lynn*, 408 F.Supp. 1323 (S.D.N.Y.1975); *St. Joseph's Historical Society v. Land Clearance for Redev. Au.*, 366 F.Supp. 605 (W.D.

Mo.1973); see also *South Hill Neighborhood Association v. Romney*, 421 F.2d 454 (6th Cir. 1969), cert. denied, 397 U.S. 1025, 90 S.Ct. 1261, 25 L.Ed.2d 534 (1970).

In the instant case, the urban renewal agreement was signed and the expenditure of funds approved on August 3, 1965. The mansion had been designated for demolition in the Marquette urban renewal plan at that time. It was not until January 31, 1975, that the mansion was listed as eligible for inclusion in the national register, and it was not until January 1, 1976, that the mansion was placed in the national register. Accordingly, the NHPA by its terms does not appear to apply to the mansion.

■ The plaintiff next argues that HUD failed to comply with section 1(3) of Executive Order 11593, 36 Fed.Reg. 8921 (May 15, 1971), and certain regulations promulgated pursuant thereto. Executive Order 11593 was issued in an effort to implement NHPA. Section 1(3) directed federal agencies to consult with the advisory council to "institute procedures and to assure that Federal plans and programs contribute to the preservation and enhancement of non-federally owned sites, structures and objects of historical, architectural or archaeological significance."

On January 25, 1974, the advisory council adopted regulations to assist federal agencies in complying with section 1(3) of Executive Order 11593. Generally, the regulations, found at 36 C.F.R. § 800, require federal agency heads to identify properties within a federal program or activity (referred to as an "undertaking") which are included in or eligible for inclusion in the national register prior to making an agency decision concerning the undertaking. The agency head is then required to determine whether the proposed undertaking adversely affects the identified property. If an adverse effect is revealed, the agency head is required to request the comments of the advisory council and to initiate a consultation procedure involving on-site inspection, a public information meeting, and a consideration of alternatives to avoid or mitigate the adverse effects.

In *Save the Courthouse v. Lynn*, 408 F.Supp. 1323 (S.D.N.Y.1975), the court determined that HUD had adopted the regulations of the advisory council as its own regulations for purposes of section 1(3) of Executive Order 11593 and that HUD is obliged to follow these regulations when applicable. 408 F.Supp. at 1337–1338. The key to the applicability of these provisions in this case is whether a decision was made by HUD subsequent to January 31, 1975, the date on which the mansion became eligible for inclusion in the national register, thereby requiring that the regulations be followed. As defined in the regulations, a "decision" means:

> ". . . the exercise of agency authority at any stage of an undertaking where alterations might be made in the undertaking to modify its impact upon historic and cultural properties." 36 C.F.R. § 800.3(g).

The plaintiff argues that since the escrowed sums for payment of the demolition and relocation costs have not been closed out, as have all the other accounts in the project, there remains for "decision" by HUD the question whether federal funds should be expended for demolition of the mansion.

I disagree. Under § 800.3(g), the "decision" point for determining whether alterations in the urban renewal project could be made to avoid an adverse impact on the mansion was passed when RAM and Marquette, pursuant to the urban renewal plan approved by HUD in 1965, agreed that the mansion site would be transferred cleared of improvements to Marquette. This was long before the Executive Order 11593 and the advisory council's regulations were promulgated. The presence of the RAM–Marquette contract in this case distinguishes *Save the Courthouse* and *Committee to Save the South Green* in which the Executive Order and regulations were found applicable.

■ I also find unpersuasive the plaintiff's argument that Marquette violated its contract with RAM because of its apparent

present intention to use the mansion site for recreational purposes rather than for dormitories. This alleged alteration in the plans for the mansion site is claimed by the plaintiff to bring the regulations into play. The plaintiff has not shown that the land use contemplated by the agreement between Marquette and RAM was committed to student housing. Moreover, there is no substantial evidence in the record which establishes the purpose to which the mansion site will ultimately be put.

For all of the above reasons, I do not believe that the plaintiff has a reasonable likelihood of success on the merits of showing a violation of NHPA, Executive Order 11593 or the regulations promulgated pursuant thereto.

The plaintiff also contends that HUD an RAM have not complied with section 102(2)(C) of the National Environmental Policy Act, 42 U.S.C. § 4332(2)(C). HUD and RAM argue that NEPA does not apply to the mansion, and HUD urges that in any event it has complied with the requirements of the act.

■ Section 102(2)(C) of NEPA requires federal agencies to "include in every recommendation or report on . . . major Federal actions significantly affecting the quality of the human environment" a detailed statement analyzing the environmental impact of the action. Because of the federal government's "continuing responsibility" under section 101(b), 42 U.S.C. § 4331(b) of NEPA, the act has been held applicable to historic structures located in federally assisted urban renewal projects ongoing at the time of NEPA's effective date, January 1, 1970, provided the federal agency remains meaningfully involved. *Jones v. Lynn*, 477 F.2d 885, 889 (1st Cir. 1973); *Hart v. Denver Urban Renewal Authority*, 551 F.2d 1178 (10th Cir. 1977); *Boston Waterfront Residents Ass'n v. Romney*, 343 F.Supp. 89 (D.Mass.1972).

■ Both HUD and RAM argue that no major federal action remained in the project after January 1, 1970, the effective date of NEPA. RAM stresses that after that date the original capital grant in the amount of $7,001,397 and the original relocation grant in the amount of $353,515 were increased in the amounts of $670,028.91 and $70,700.65 respectively, small increases in relation to the entire project. HUD emphasizes that after January 1, 1970, "there were no significant programmatic changes in the urban renewal plan." .

In addition, HUD argues that it complied with NEPA even though the act was not applicable to this project. On April 5, 1974, RAM applied to HUD for an "early closeout grant" as part of an amendatory loan and grant application. The area counsel for HUD determined that a special environmental clearance was necessary because the urban renewal project had never undergone NEPA review. A special environmental clearance report was prepared and filed on May 3, 1974. The document did not identify the planned demolition of the mansion as an adverse environmental impact; indeed, the mansion is not mentioned at all in the report, apparently because the mansion was not designated as eligible for listing in the national register until January 31, 1975.

In my judgment, HUD has taken too narrow a view of its "continuing responsibility . . . to use all practicable means . . . to improve and coordinate Federal plans, functions, programs, and resources to . . . preserve important historic, cultural and natural aspects of our national heritage . . . " 42 U.S.C. § 4331, and "to the fullest extent possible" to report on the adverse environmental impact of major federal actions. 42 U.S.C. § 4332. In *Jones v. Lynn*, supra at 889, the court observed:

"While it may be fruitless to apply procedural protections afforded by NEPA to a project which has been so far terminated to preclude *any* change in plans, 'the only correct interpretation would seem to be that if the requirements of the Act can be feasibly applied—even if the project in question was begun prior to the enactment of NEPA—then they should in fact be applied.' Note, Retroactive Application of the National Environmental Poli-

cy Act of 1969, 69 Mich.L.Rev. 732, 743 (1971)."

Certainly, even after the conditional close-out of accounts on August 29, 1975, HUD retained sufficient control over the expenditure of funds under the project feasibly to make a study of the adverse environmental impact of the mansion's demolition and to consider alternatives. Thereafter, HUD had three years before the Knights of Columbus lease expired to make such a study without infringing on Marquette's right to receive a cleared parcel in 1978. As the court noted in *Hart v. Denver Urban Renewal Authority,* supra at 1182, under similar circumstances:

"With this ongoing project, the application of NEPA must be considered in relation to the particular matter or structure being evaluated. We are concerned with the historical value of a single structure in a very large project. This can certainly be separated from the other elements and the burden of compliance with the regulations compared with any interference or stoppage of the project or of substantial elements."

Although much of HUD's involvement in the project has been terminated, its control over the remaining funds for demolition of the mansion is sufficient, in my opinion, to impose further responsibilities under NEPA. In *Jones v. Lynn,* supra, the court recognized that in applying NEPA to an ongoing urban renewal project, consideration must be given to vested rights. 477 F.2d at 889. It is likely that Marquette's contractual right to the mansion site cleared of improvements precludes HUD from considering as a NEPA alternative the retention of the mansion at its present site. However, meaningful consideration may be given to relocation of all or part of the mansion. All parties to this controversy have expressed their willingness to cooperate in a relocation plan.

For the foregoing reasons, I believe that the plaintiff has shown a reasonable likelihood of success on the merits of its claim that HUD failed to comply with NEPA.

A "lack of serious adverse effects on others" is one of the prerequisites for interim injunctive relief. *Kolz v. Board of Education of the City of Chicago,* 576 F.2d 747, 748 (7th Cir. 1978). In this action, an injunction would be directed nominally at HUD and RAM, but its true burden would fall solely on Marquette. Marquette's contractual right to the cleared land vested on June 30, 1978, the expiration date of the Knights of Columbus lease and of RAM's license to maintain the mansion on the mansion site. Those rights will be impaired each day the injunction continues. Moreover, Marquette is not charged with complicity in the alleged violation of federal law and has no power to cure the violation. Under these circumstances, I agree with Marquette that it would be inequitable to impose an injunction whose effect will be to impair Marquette's rights indefinitely while the other parties litigate the merits of this controversy.

Marquette's cross motion seeks an injunction on different terms. Marquette proposes (1) that RAM be affirmatively enjoined promptly to remove the significant fixtures of the mansion's interior, to secure the eviction of the Knights of Columbus with speedy legal procedures, and to remove the structure which abuts the mansion; (2) that the plaintiff be allowed in the interim to move the court for approval of a plan for restoration, preservation or relocation of the structure; (3) that if such a plan is approved, the mansion shall be removed, or, if such a plan is not approved, that RAM shall promptly proceed to demolish the mansion. Marquette agrees to a 6 month delay in the performance of the proposed third step. Marquette also requests that the injunction enjoin any public or private person from interfering with the injunction and that further proceedings in this case be stayed pending compliance with the injunction.

RAM and the plaintiff oppose an injunction in the form proposed by Marquette. RAM points out physical problems with Marquette's proposals requiring removal of parts of the mansion's interior and demolition of the structure which abuts the man-

sion. In addition, the plaintiff correctly observes that it is not the court's role to engage in the environmental clearance procedure and to decide what should become of the mansion. Thus, I cannot accept Marquette's proposed injunction.

In my judgment, it is appropriate affirmatively to enjoin HUD promptly to undertake its environmental review procedures with respect to the mansion and to prepare by January 2, 1979, the environmental impact statement required under 42 U.S.C. § 4332. Copies of the statement should be served on the parties and filed with the court by January 2, 1979. The defendants will be preliminarily enjoined from authorizing or permitting the demolition of the mansion. Upon the parties' and the court's receipt of the environmental impact statement on January 2, 1979, Marquette may move for an order vacating the preliminary injunction. The propriety of continuing the injunction over Marquette's objection at that time will then be considered in relation to the statement.

The defendants RAM and Marquette have moved to dismiss claims 6 and 7 of the complaint for lack of subject matter jurisdiction. Claims 6 and 7 are pendent jurisdiction claims alleging violation of the Wisconsin Historic Preservation Program, § 44.22, Wis.Stats., and the Wisconsin Environmental Protection Act, § 1.11, Wis.Stat. The motion to dismiss for lack of subject matter jurisdiction will be denied. However, RAM's and Marquette's motion to dismiss for failure to state a claim will be granted as to claims 6 and 7 of the complaint because §§ 44.22 and 1.11 by their express terms apply only to state governmental agencies. RAM is not a state agency. *Redevelopment Authority v. Canepa*, 7 Wis.2d 643, 97 N.W.2d 695 (1959). In all other respects, the motions to dismiss will be denied.

Marquette's motion for an order requiring the plaintiff to make its complaint more definite and certain will be denied. I agree that the complaint is overly long and in some respects repetitious and does not state with clarity against which of the defendants each of the claims for relief is asserted. However, in context I believe the complaint is sufficiently clear to permit the parties to frame responsive pleadings.

Therefore, IT IS ORDERED that the plaintiff's motion for a preliminary injunction be and hereby is granted. HUD is affirmatively enjoined promptly to conduct an environmental review procedure and to prepare by January 2, 1979, the environmental impact statement as set forth in 42 U.S.C. § 4332. Copies of the environmental impact statement should be served on the parties to this action and filed with the court by January 2, 1979. The defendants HUD and RAM are preliminarily enjoined from authorizing or permitting the demolition of the Elizabeth Plankinton mansion.

IT IS ALSO ORDERED that the defendant RAM's motion to dismiss for failure to state a claim be and hereby is denied, except that as to claims 6 and 7 of the complaint, the motion be and hereby is granted.

IT IS FURTHER ORDERED that the motion of the defendant Marquette University for an alternative injunction be and hereby is denied.

IT IS FURTHER ORDERED that the motion of the defendant Marquette University to dismiss be and hereby is denied, except that as to claims 6 and 7 of the complaint, the motion be and hereby is granted.

IT IS FURTHER ORDERED that the motion of the defendant Marquette University for an order requiring the complaint to be made more definite and certain be and hereby is denied.