**WISCONSIN HERITAGES, INC., a Wisconsin Corporation, Plaintiff,**

v.

**Patricia HARRIS et al., Defendants.**

**No. 78-C-632.**

United States District Court, E. D. Wisconsin.

Sept. 11, 1979.

William H. Lynch, Daniel J. Steininger, Ebert & Ebert, Milwaukee, Wis., for plaintiff.

Ray J. Aiken, University Legal Counsel, Milwaukee, Wis., for Marquette University.

James B. Brennan, City Atty., James E. Fitzgerald, Asst. City Atty., Milwaukee, Wis., for Redevelopment Authority and William Ryan Drew.

Joan F. Kessler, U. S. Atty., Milwaukee, Wis., for HUD.

DECISION and ORDER

MYRON L. GORDON, District Judge.

One of the defendants, Marquette University, has filed a motion to alter the terms of the preliminary injunction entered on November 17, 1978. The motion will be granted in part.

The plaintiff filed this action alleging that the defendants failed to comply with several federal and state environmental and historic preservation laws in connection with the contemplated demolition of the Elizabeth Plankinton mansion. The plaintiff, Wisconsin Heritages, Inc., is a nonprofit Wisconsin corporation organized, in part, to preserve buildings of architectural and historical value. The defendants included various officials of the United States Department of Housing and Urban Development (collectively referred to herein as "HUD"), the Redevelopment Authority of Milwaukee (RAM), and Marquette University. HUD is responsible for administering federal assistance to urban renewal programs. RAM is responsible for preparing and implementing urban renewal plans for the city of Milwaukee. Marquette is the present owner of the land on which the Elizabeth Plankinton mansion is located.

On November 17, 1978, I entered an order preliminarily enjoining the defendants HUD and RAM from authorizing or permitting the demolition of the mansion. 460 F.Supp. 1120 (1978). I also affirmatively enjoined HUD to produce an environmental impact statement as required by 42 U.S.C. § 4332. The order also stated that

"Upon the parties' and the court's receipt of the environmental impact statement . . ., Marquette may move for an order vacating the preliminary injunction. The propriety of continuing the injunction over Marquette's objection at that time will then be considered in relation to the statement." 460 F.Supp. at 1127.

HUD's "Final Environmental Impact Statement" (FEIS) was filed on June 7, 1979. It stated in part:

"It is our opinion that HUD assistance to the proposed action would result in environmental impacts which are significantly adverse and therefore considered unacceptable under HUD environmental policies and standards. Therefore, HUD selects alternative 3.210 *No Federal action.* This alternative is chosen in view of the possibility of relocation.

"HUD will review this decision in six months of the date of this FEIS. It is expected that HUD will receive evidence of financial commitment to relocate the Plankinton House along with a workable relocation and continued maintenance plan."

Marquette has now moved to alter the preliminary injunction in two ways: first, by establishing a date certain by which the injunction would be vacated, and second, by requiring the plaintiff to post security during the pendency of the injunction.

An attempt is currently underway to arrange for the removal of the Elizabeth Plankinton mansion to a different site. In view of this attempt and the recommendations contained in HUD's environmental impact statement, the parties have commendably reached an agreement regarding the remaining time in which the present injunction should remain in effect. Essentially the parties are agreed that in the event contracts are entered into prior to March 1, 1980, between RAM and a qualified person or corporation, which provide for the removal of the mansion on or prior to August 31, 1980, then the preliminary injunction should terminate upon the removal of the mansion from its present location. In the event such contracts are not entered into by March 1, 1980, then the preliminary injunction presently in effect should be vacated on that date.

Since there is apparent agreement with this arrangement, and this timetable is consistent with the recommendations contained in HUD's environmental impact statement, the preliminary injunction presently pending in this action will be modified as discussed above.

Marquette has also moved that the plaintiff and RAM be required to post security during the pendency of the preliminary injunction. Marquette requests that the security required of the plaintiff be in the amount of $1,468 times the number of months the preliminary injunction will be in effect. The sum of $1,468 represents the monthly rental paid by the Knights of Columbus, the last tenant of the Elizabeth

Plankinton mansion. RAM, in its brief in support of Marquette's motion insofar as it requires the plaintiff to post security, has suggested that such security be in an amount sufficient to cover RAM's costs for custodial and security services. RAM's suggestion would entail the posting of approximately $30,000 in addition to the amount requested by Marquette.

Rule 65(c), Federal Rules of Civil Procedure, provides in pertinent part:

"Security. No restraining order of preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained."

The purpose of the security requirement is to protect the restrained parties from damages incurred by the wrongful issuance of an injunction. *Commerce Tankers v. National Maritime Union of America*, 553 F.2d 793, 800 (2d Cir.), cert. denied, 434 U.S. 923, 98 S.Ct. 400, 54 L.Ed.2d 280 (1977); 7 Moore's Federal Practice ¶ 65.09. The district judge has the discretion to determine what amount of security, if any, is appropriate. *Wayne Chemical, Inc. v. Columbus Agency Service Corp.*, 567 F.2d 692, 701 (7th Cir. 1977); *Scherr v. Volpe*, 466 F.2d 1027, 1035 (7th Cir. 1972).

■ With regard to Marquette's motion for the posting of security, there is no legal basis for the motion insofar as it is directed at RAM. Rule 65(c) provides for the posting of security by the "applicant" for a preliminary injunction. In the case at bar, RAM was not the applicant for the preliminary injunction, but rather is itself restrained by the injunction. Accordingly, there is no basis for requiring it to post a security during the pendency of the injunction.

■ It is also my judgment that Wisconsin Heritages should not be required to post security. The injunction imposed by the court in this case required HUD to comply with the strictures of the National Environ-

mental Policy Act (NEPA), 42 U.S.C. § 4331 et seq. Congress has indicated that private environmental organizations should assist in enforcing NEPA. Section 101(a) of NEPA provides:

"Congress . . . declares that it is the continuing policy of the Federal Government, in cooperation with . . . concerned public and private organizations, to use all practicable means and measures . . . to create and maintain conditions under which man and nature can exist in productive harmony . . . ." 42 U.S.C. § 4331(a).

The requirement of the substantial security requested by Marquette and RAM would, in my opinion, hinder the enforcement of NEPA by discouraging "concerned public and private organizations" from bringing suits to enforce its provisions. The plaintiff in this case is a nonprofit organization with no apparent financial stake in the outcome of this suit. If it were forced to post thousands of dollars in security, it would be effectively deterred from bringing this sort of action. Such deterrence would contravene Congress' intention that groups such as the plaintiff bring actions to aid in the enforcement of national environmental policy. *Natural Resources Defense Council, Inc. v. Morton*, 337 F.Supp. 167 (D.D.C.1971). *See also Bass v. Richardson*, 338 F.Supp. 478, 491 (S.D.N.Y. 1971).

I have examined other cases involving suits brought under NEPA. In many of these cases where preliminary injunctions were entered, only nominal bonds, if any, have been required. *See e. g., Scherr v. Volpe*, 466 F.2d 1027 (7th Cir. 1972) (no bond); *West Virginia Highlands Conservancy v. Island Creek Coal Co.*, 441 F.2d 232 (4th Cir. 1971) ($100.00); *State of Alabama ex rel. Baxley v. Corps of Engineers*, 411 F.Supp. 1261 (N.D.Ala.1976) ($1.00); *Natural Resources Defense Council, Inc. v. Morton*, 337 F.Supp. 167 (D.D.C.1971) ($100.00); *Environmental Defense Fund v. Corps of Engineers*, 331 F.Supp. 925 (D.D.C.1971) ($1.00); *Wilderness Society v. Hickel*, 325 F.Supp. 422 (D.D.C.1970) ($100.00). For the

reasons I have stated, I do not believe that it would be appropriate to require the plaintiff to post security in this case.

Therefore, IT IS ORDERED that Marquette's motion to modify the preliminary injunction presently in effect in this case be and hereby is granted in part.

IT IS ALSO ORDERED that if prior to March 1, 1980, contracts are entered into between the Redevelopment Authority of Milwaukee and a qualified person or corporation which provide for the removal of the Elizabeth Plankinton mansion from its present site on or prior to August 31, 1980, the preliminary injunction pending in this case will be vacated upon the removal of the mansion from its present location.

IT IS FURTHER ORDERED that in the event such contracts are not entered into by March 1, 1980, then the preliminary injunction presently in effect will be vacated on that date.

IT IS FURTHER ORDERED that insofar as Marquette has moved for the posting of security, the motion be and hereby is denied.